[No. G008645. Fourth Dist., Div. Three. May 29, 1991.]

ALLEN S. WARNER et al., Plaintiffs and Appellants, v.
FIRE INSURANCE EXCHANGE, Defendant and Respondent.

COUNSEL

Davis, Samuelson, Blakely & Goldberg and William E. Baker, Jr., for Plaintiffs and Appellants.

Waldman, Bass, Stodel & Graham, Bruce Monroe and Craig H. Bell for Defendant and Respondent.

OPINION

BEACOM, J.*—

## I. INTRODUCTION

The Warners appeal from a judgment of dismissal after the trial court sustained the demurrer of Fire Insurance Exchange (the insurer) to their first amended complaint. The Warners seek recovery from an all-risk homeowner's policy issued by the insurer to the Morrises (the insureds) from whom they bought a residence. The trial court ruled the policy did not cover the Warners' claims for damages for negligent misrepresentations made by the insureds in the course of selling the property.

We affirm because there was no damage to tangible property during the time the policy was in effect.

## II. THE FACTS

The insureds sold their residence to the Warners. In showing the property the insureds erroneously represented to the Warners the property included an area of about 35 feet by 150 feet. The deficiency was discovered about one year after the sale when the adjoining property owner fenced off the land in question. At the same time the Warners learned the patio attached to their house violated local setback restrictions. The Warners also lost their panoramic view, the ability to improve the property consistent with plans under consideration before the purchase was completed, and funds expended on architectural plans and landscaping.

The Warners sued the insureds and others for declaratory relief, breach of contract, fraud, negligent misrepresentation, breach of fiduciary duty, and rescission and restitution. The insurer refused to provide a defense or to

---

*Judge of the Orange Superior Court sitting under assignment by the Chairperson of the Judicial Council.

indemnify the insureds. The insureds stipulated to a judgment in the amount of $200,000 in favor of the Warners and assigned to the Warners their rights against the insurer. In return they received from the Warners a covenant not to execute on the stipulated judgment.

The Warners then initiated this suit. The insurer twice demurred, claiming no coverage and no duty to defend. The trial court examined the policy in question and took judicial notice of the court file in the underlying suit between the Warners and the insureds. Finally, the demurrer was sustained without leave to amend.

### III. DISCUSSION

#### A. *First Party Coverage*

■ The Warners do not specify whether their claim is for loss under division I of the policy which covers first party claims, i.e., property loss or damage sustained by the insureds, or for damages under division II, which covers third party claims, i.e., the insureds' liability to others resulting from bodily injury or property damage caused by the unintentional tortious conduct of the insureds. Their various assertions blend concepts from both divisions, with apparent disregard for the unique coverages of each division. (See *Garvey* v. *State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395, 399, fn. 2 [257 Cal.Rptr. 292, 770 P.2d 704].) Consequently, their analysis of the policy in question is seriously flawed.

Division I coverage is limited to loss of property owned by the insureds. The complaint simply fails to allege a loss of any property *of the insureds*. Because the Warners' claim is based on misrepresentation, it must live or die as a claim for tort liability coverage under division II, which provides for *third party* coverage. Therefore, the provisions of division I of the policy relating to first party coverage are not relevant to our analysis. (See *Fidelity & Cas. Co.* v. *Reserve Ins. Co.* (9th Cir. 1979) 596 F.2d 914, 920, fn. 4 [rejecting argument for coverage under liability section of policy based on provisions of property loss section].) Moreover, even if the Warners, assignees of the insureds' rights under the policy, were making a claim under division I, it could not prevail because the insureds themselves did not have an insurable interest in the property at the time of any arguable loss.

The policy itself requires the insured to have an interest in the property at the time of the loss. The policy contains the following language: "[T]his Company . . . does insure (the insured named in the Declarations) . . . to the extent of the actual cash value of the property at the time of the loss, but not . . . in any event for more than the interest of the insured . . . ."

Likewise, the Insurance Code sets forth the same requirement. Insurance Code section 280 provides, "If the insured has no insurable interest, the contract is void." Insurance Code section 286 provides, "An interest in property insured must exist when the insurance takes effect, and when the loss occurs, but need not exist in the meantime . . . ." Insurance Code section 282 provides, "An insurable interest in property may consist in: [¶] 1. An existing interest; [¶] 2. An inchoate interest founded on an existing interest; or, [¶] 3. An expectancy, coupled with an existing interest in that out of which the expectancy arises."

Under *Banerian* v. *O'Malley* (1974) 42 Cal.App.3d 604 [116 Cal.Rptr. 919], a seller does not have an insurable interest in property after he or she sells it. *Banerian* was a legal malpractice case which required the court to determine whether the seller of certain property had an insurable interest in it. The case arose from an underlying suit for negligent misrepresentation by the seller in a real property transaction. The buyer sued for damages resulting from extensive land movement which took place two months after the policy terminated and more than a year after the seller sold the property. The court held the seller did not have an insurable interest in the property within the meaning of Insurance Code section 286 because the loss occurred at the time the property was damaged, which was after the policy had lapsed, and not at the time of the misrepresentations and sale, when the policy was in force. (*Id.* at p. 615.)

In this case, if there was an event which could even conceivably be construed as precipitating a "physical loss to property" as the term is used in division I, it would be the construction of the fence by the adjoining property owner which resulted in the severance of the 35-foot by 150-foot parcel, and loss of the panoramic view. That event took place about one year after the sale. The first amended complaint, indeed, only alleges the policy was in force during the time the insureds occupied the premises. There was thus no loss to the property, direct or indirect, during the policy period. Therefore, the insureds did not have an insurable interest under the terms of division I of the policy at the time any possible "property loss" might have occurred.

### B. *Third Party Coverage*

██ The question of basic coverage under the policy's insuring clause must be determined before considering exclusions. (*Royal Globe Ins. Co.* v. *Whitaker* (1986) 181 Cal.App.3d 532, 537 [226 Cal.Rptr. 435]; see *Giddings* v. *Industrial Indemnity Co.* (1980) 112 Cal.App.3d 213, 218 [169 Cal.Rptr. 278].)

Third party coverage is dealt with in "Division II—Comprehensive Personal Liability." Under "Coverage C" the insurer agrees "[t]o pay all damages which the insured becomes legally obligated to pay because of bodily injury to any person and/or damage to property caused by an occurrence to which this insurance applies." This portion of the policy defines "property damage" as "injury to or destruction of *tangible property* of *others*, including loss of use thereof." (Italics added.) This is significant in several respects.

### 1. *Tangible Property*

First, coverage is limited to *"tangible property"* under the express definition of the term "property damage." The term "tangible property" has been scrutinized by various appellate courts in recent times.

"Understood in its plain and ordinary sense, 'tangible property' means 'property (as real estate) having physical substance apparent to the senses' (Webster's Third New Internat. Dict. (1968) p. 2337). To construe the explicit words 'tangible property' to include intangible economic interests and property rights requires a strained and farfetched interpretation, doing violence to the plain language of the policies. Such an interpretation would rewrite the policies to fasten on the insurers a liability they have not assumed." (*Giddings* v. *Industrial Indemnity Co., supra*, 112 Cal.App.3d at p. 219.)

Four cases illustrate how economic damages arising out of an insured's negligent misrepresentations do not constitute damage to "tangible" property. In *Safeco Ins. Co. of America* v. *Andrews* (9th Cir. 1990) 915 F.2d 500, the Ninth Circuit reviewed a California case involving a claim of coverage for property damage under a similar policy on similar facts. Kuehl, the buyer, sued Andrews, the seller, for (1) negligent failure to inspect and inform Kuehl of defects, (2) misrepresentation, (3) breach of contract, and (4) rescission. Safeco claimed in a declaratory relief suit there was no duty to defend because Kuehl did not allege any "property damage" or "occurrence" within the meaning of the policy. (*Id.* at p. 501.) Property damage was defined in the contract as " 'physical injury to or destruction of tangible property, including loss of use of this property.' " (*Id.* at p. 502.) The court stated: "Kuehl is seeking damages for Andrews's alleged negligence in failing to inspect and inform him of defects in the property and for misrepresentation 'materially affecting the value or desirability' of the property. Kuehl's claims do not expose Andrews to liability for any damage to tangible property, but rather for economic loss resulting from Andrews's alleged failure to discover and disclose facts relevant to the property's value and desirability. Such harm is outside the scope of the policy." (*Ibid.*)

Likewise, damages resulting from negligent misrepresentation made by the seller of an automobile regarding the true mileage on the odometer and absence of major mechanical defects were held only to be damage to the purchasers' "pecuniary interests" in *Fresno Economy Import Used Cars, Inc.* v. *United States Fid. & Guar. Co.* (1977) 76 Cal.App.3d 272, 279 [142 Cal.Rptr. 681]. The *Fresno* court interpreted a liability coverage policy that provided payment for " 'all sums which the *Insured* shall become legally obligated to pay as damages because of [¶] A. *bodily injury* or [¶] B. *property damage* . . . .' " (*Id.* at p. 277.) The court explained "the out-of-pocket loss caused by the fact that plaintiffs did not receive full value for the money paid for the purchase" was damage to plaintiff's pecuniary interests. (*Id.* at p. 279.) "Such loss of anticipated value does not constitute an 'injury to or destruction of tangible personal property' as defined in the policy." (*Ibid.*)

Allegations that the insured's negligent misrepresentations caused unexpected losses on tax shelter schemes did not constitute damage or injury to tangible property under a standard business liability policy in *Allstate Ins. Co.* v. *Interbank Financial Services* (1989) 215 Cal.App.3d 825, 830 [264 Cal.Rptr. 25]. The *Allstate* court quoted *Giddings* v. *Industrial Indemnity Co.,* *supra,* 112 Cal.App.3d at page 219, to the effect that " 'strictly economic losses like lost profits, loss of goodwill, loss of the anticipated benefit of a bargain, and *loss of an investment,* do not constitute damage or injury to tangible property covered by a comprehensive general liability policy.' " (*Allstate, supra,* 215 Cal.App.3d at p. 830.)

Claims predicated on negligent and intentional fraudulent misrepresentations were also held not to be covered under a liability policy for personal injury or property damage in *Horsemen's Benevolent & Protective Assn.* v. *Insurance Co. of North America* (1990) 222 Cal.App.3d 816, 820-821 [271 Cal.Rptr. 838]. The Horsemen's Association was sued for negligently misrepresenting the extent of insurance coverage applicable to its members.

The Warners' complaint, in this case, does not allege damage to a tangible property interest. It only contains allegations of damage to the Warners' pecuniary or economic interests.

### 2. *Policy Term*

*State Farm Fire and Cas. Co.* v. *Neumann* (N.D. Cal. 1988) 698 F.Supp. 195 is illustrative of California law on the question of liability for damage within the term of a homeowner's policy. In *Neumann,* the Schells (the buyers) charged that a lot they had purchased was smaller than had been represented, that a landslide had damaged the property *prior* to the sale, and there were numerous other problems, such as leaks, broken fixtures and dry

rot. "The Schells also charged the Neumanns [the sellers] with negligent construction and maintenance of the home, *intentional and negligent misrepresentation at the time of the sale,* and with various contract and breach of warranty claims." (698 F.Supp. at p. 195, fn. 1, italics added.)

The Neumanns had a homeowner's policy which insured against personal liability for property damage. The district court found no coverage because the express terms of the contract limited coverage to claims for damage occurring within the policy period. (698 F.Supp. at p. 196.)

In the present case, the insureds' policy stated it "applies only to . . . occurrences or accidents under Division II which happen during the policy term." Here, as in *Neumann,* nothing damaged the property during the policy term.

### 3. *The Duty to Defend*

■ It is axiomatic the duty to defend is broader than the duty to indemnify. (See *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 274-275 [54 Cal.Rptr. 104, 419 P.2d 168].) That duty is not unlimited, but nonetheless measured by the nature and kinds of risks covered by the policy. (*Id.* at p. 275.) In this case, there was no duty to defend because the potential for recovery was limited to damage which in legal contemplation constituted damage to intangible economic interests and property rights.

This result obtains even though the Warners seek to recover on the theories of declaratory relief, breach of contract, breach of the implied covenant of good faith and fair dealing, and for bad faith breach of contract. (See *Horsemen's Benevolent & Protective Assn.* v. *Insurance Co. of North America, supra,* 222 Cal.App.3d at p. 822; *State Farm Fire & Casualty Co.* v. *Keenan* (1985) 171 Cal.App.3d 1, 30 [216 Cal.Rptr. 318]; *Jaffe* v. *Cranford Ins. Co.* (1985) 168 Cal.App.3d 930, 934 [214 Cal.Rptr. 567]; *C & H. Foods Co.* v. *Hartford Ins. Co.* (1984) 163 Cal.App.3d 1055, 1067 [211 Cal.Rptr. 765].)

### IV. CONCLUSION

Basically, the Warners seek to recover, for the theft or misappropriation of property by their predecessors in interest, damages for the value of the property, improvements on that property, and for removal of those improvements. When they discovered the fraud perpetrated upon them by the insureds they sued the insureds who then agreed to settle for $200,000, but only on condition the insureds would not have to pay a cent. Can we assume that $200,000 represents the difference in value between what the Warners

bought and what the Warners thought they bought? It appears the Warners, now standing in the shoes of those who defrauded them, seek to convert a homeowner's policy into a title policy. The insurer never assumed that kind of risk. The order of dismissal is affirmed.

Sills, P. J., and Crosby, J., concurred.