[No. D011407. Fourth Dist., Div. One. May 22, 1992.]

ROBERT F. DEVIN et al., Plaintiffs and Appellants, v.
UNITED SERVICES AUTOMOBILE ASSOCIATION, Defendant and
Respondent.

**COUNSEL**

Post, Kirby, Noonan & Sweat, David J. Noonan, Stephanie Sontag and Thomas W. Bettles for Plaintiffs and Appellants.

Ropers, Majeski, Kohn, Bentley, Wagner & Kane, Michael J. Brady, Lawrence M. Guslani and Robert P. Andris for Defendant and Respondent.

**OPINION**

FROEHLICH, J.—Robert and Susan Devin (Devins) appeal from a judgment entered in favor of United Services Automobile Association (USAA)

after USAA's motion for nonsuit was granted. Devins' complaint sought recovery based on the allegedly wrongful refusal by USAA to defend or indemnify Devins in a third party action brought against them by the purchasers of Devins' house in Huntington Beach, the purchasers being Robert and Marilyn McNair (McNairs). We conclude USAA had no duty to defend Devins in the underlying lawsuit, and therefore the order granting nonsuit was proper.

## I

### FACTUAL AND PROCEDURAL BACKGROUND

1. *The Third Party Lawsuit*

Devins owned a home on Cavan Circle in Huntington Beach, which they sold to McNairs in 1984. Escrow closed September 5, 1984, and McNairs took possession four days later. Devins later bought a home on Basalto Street in Carlsbad.

In 1986, McNairs sued numerous parties. The complaint pleaded claims against Devins for intentional and negligent misrepresentation. The complaint alleged the house was sliding, slipping, settling, sinking, fracturing and buckling. McNairs further alleged Devins ". . . knew or should have known, that the property had experienced extensive subsidence damage and that said subsidence problems were continuing, and would continue to cause severe structural damage to the house and the property." According to McNairs' complaint, Devins failed to disclose these defects to them. McNairs sought damages for the decreased value of the home which these defects had caused and would continue to cause in the future, as well as damages for emotional and physical distress. The factual basis for these allegations is unclear, and McNairs' complaint sets forth no dates establishing when the subsidence damages supposedly occurred.

Devins timely tendered defense of McNairs' action to USAA under their homeowners' policies.

2. *The Insurance Policies*

Devins were insured under two homeowners' policies issued by USAA. The first policy covered the Cavan Circle home through September 6, 1984, i.e., through the close of escrow on the sale to McNairs, and the second policy insured the Basalto Street home starting on October 18, 1984.

The relevant policy language regarding indemnity and defense was identical in both policies. The policies provided: "Coverage E—Personal Liability. If a claim is made or a suit is brought against an insured for damages

because of *bodily injury or property damage caused by an occurrence to which this coverage applies*, we will: . . . 2. Provide a defense . . . ." (Italics added.)

The policies defined "occurrence" to mean "an accident, including exposure to conditions, which results, during the policy period, in: a. bodily injury; or b. property damage." "Property damage" was defined as "physical injury to, destruction of, or loss of use of *tangible* property."[1] (Italics added.)

The policies also contained various exclusions. Personal liability coverage was excluded for bodily injury or property damage "arising out of a premises (1) owned by an insured . . . that is not an insured location, . . ." and personal liability coverage was excluded for property damage "to property owned by insured."

### 3. *Investigation and Rejection of the Tender of Defense*

USAA retained Mr. Lukas to investigate the claim shortly after receiving the tender from Devins. When he was unsuccessful in contacting Devins' attorney by phone, Lukas corresponded in mid-March requesting a meeting to gather information about the claim. He eventually was able to contact McNairs' attorney to arrange a site inspection, although McNairs' counsel postponed the inspection until May 4, 1987. Lukas also had difficulty obtaining interviews with Devins, their counsel refusing to allow such a meeting until May when counsel could be present. The May 12 meeting was again postponed by Devins' counsel and reset for May 21. Lukas also sought documentation concerning the claim, which documentation was finally completed in mid-June.

Within three weeks after obtaining the documents, USAA rejected Devins' tender of defense. Based on the complaint and the facts learned by USAA, the tender was rejected because there was (1) no occurrence which resulted in property damage or bodily injury under the terms of the policy; (2) no property damage or bodily injury as defined by the policy; (3) no coverage

---

[1] Although the term "accident" is not defined in the USAA policies, a "Quick Reference—Policy Summary" provided to Devins by USAA stated: "This policy insures your home and other structures located on and appertaining to your residence premises. In addition, this policy gives you coverage for your personal property and provides financial protection when you are held liable for damage to the property of others or for injury to others—both on and off your property. These coverages are subject, however, to those limitations and restrictions specifically identified and further explained where necessary."

for injuries intended or expected by the insured;[2] (4) no coverage for liabilities under contracts; and (5) no coverage for property damage to property owned by the insured. Although Devins' response letter asserted claims for property damage and bodily injury, it merely reiterated the contents of McNairs' complaint and contained no additional facts suggesting how McNairs' claims might fall within a covered occurrence. When USAA continued to deny a defense, Devins filed this bad faith action.

At trial of the bad faith action,[3] the examiner for USAA stated he did not know when the property damage began, but it conceivably began after the property had been sold. He was also aware that McNairs sought emotional distress damages from Devins, and believed these were the only bodily injuries sought.

### 4. *The Nonsuit Motion*

The case was tried before a jury. After Devins rested their case, USAA moved for a nonsuit, arguing (1) as a matter of law, there was no duty to defend or indemnify in this case; (2) the legal issues had already been adjudicated by a pretrial ruling that McNairs' complaint did not allege either property damage or bodily injury damages;[4] (3) there was adequate investigation as a matter of law; and (4) there is no private action for violation of statutory duties as a matter of law. After argument, the court granted USAA's motion.

Devins filed a timely appeal from the judgment as well as from the rulings granting summary adjudication of issues.

---

[2] The invocation of this exclusion was apparently directed at McNairs' allegation that Devins had intentionally defrauded them. The USAA property examiner assigned to the case indicated that, based on USAA's investigation, he had no reason to disbelieve Devins' claim that they were unaware of the alleged problems or that they intended to injure McNairs. Moreover, Devins testified they were unaware of the problems when they sold the house.

[3] USAA ultimately paid the McNairs $5,000, and the McNairs dismissed with prejudice their action against Devins. In the remaining bad faith action, Devins sought reimbursement from USAA of $3,900.24—the total fees and costs incurred by Devins in defending McNairs' case.

[4] USAA had previously filed a motion seeking summary judgment or, alternatively, summary adjudication of seven issues. Among the issues presented were: (1) the allegations in McNairs' complaint did not fall within the definition of occurrence as defined by the policy; (2) McNairs' complaint did not allege property damage against Devins; (3) McNairs' complaint did not allege bodily injury damages against Devins; and (4) the policy is clear and unambiguous with respect to its exclusion from coverage of the intentional conduct of its insureds. The court denied the request for summary judgment, but granted summary adjudication of issues 1 to 4. Although the motion was premised on interpreting the Cavan Circle policy, both policies contain identical language defining occurrence, bodily injury, defense provisions and exclusions. We therefore find no merit in Devins' argument that the ruling on the summary adjudication of issues was irrelevant at the time of trial.

II

STANDARD OF REVIEW

■ In *Nally* v. *Grace Community Church* (1988) 47 Cal.3d 278, 291 [253 Cal.Rptr. 97, 763 P.2d 948], our Supreme Court summarized the law on nonsuits as follows:

"A defendant is entitled to a nonsuit if the trial court determines that, as a matter of law, the evidence presented by plaintiff is insufficient to permit a jury to find in his favor. [Citation.] 'In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded. The court must give 'to the plaintiff('s) evidence all the value to which it is legally entitled, . . . indulging every legitimate inference which may be drawn from the evidence in plaintiff('s) favor.' " [Citation.] A mere 'scintilla of evidence' does not create a conflict for the jury's resolution; 'there must be *substantial evidence* to create the necessary conflict.' [Citation, italics in original.] [¶] In reviewing a grant of nonsuit, [the appellate court is] 'guided by the same rule . . . .' [Citation.]"

■ Our review is also governed by the familiar admonition that " '. . . a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.' [Citation.]" (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10].) ■ Thus, where a nonsuit has been granted for the wrong reason but the order itself is correct based on other grounds, we must affirm the order. (*Walker* v. *Northern San Diego County Hospital Dist.* (1982) 135 Cal.App.3d 896, 899-900 [185 Cal.Rptr. 617]; *Mikialian* v. *City of Los Angeles* (1978) 79 Cal.App.3d 150, 158-159 [144 Cal.Rptr. 794].)

We therefore must determine whether the facts, viewed in the light most favorable to Devins, show USAA had no duty to defend.

III

ANALYSIS

A. *The Duty to Defend Exists Only When There Is Potential for the Third Party to Assert a Claim Covered by the Policy*

■ USAA argued below, and now urges on appeal, the nonsuit was proper because there is no evidence of any possibility McNairs' lawsuit could have encompassed a covered claim.

■ It is axiomatic that an insurer's duty to defend is separate from and broader than its duty to indemnify. (*State Farm Fire & Casualty Co.* v. *Eddy* (1990) 218 Cal.App.3d 958, 965 [267 Cal.Rptr. 379].) The duty to defend is not measured solely by how the third party denominates its complaint or frames its theories, but is also measured by whether there is any *potential* for the third party's complaint to assert a covered claim. (*CNA Casualty of California* v. *Seaboard Surety Co.* (1986) 176 Cal.App.3d 598, 606-607 [222 Cal.Rptr. 276].) Thus, if the insurer learns facts—whether from the complaint, the insured or another source—which create a potential for the third party to assert a covered claim, the insurer owes a duty to defend. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275-277 [54 Cal.Rptr. 104, 419 P.2d 168].)

Additionally, the duty to defend is measured at the *outset* of the litigation because, unlike the duty to indemnify, which is determinable only after the basis for the insured's liability is finally established, the duty to defend is based on the potential for the establishment of a covered claim, not the actual establishment of a covered claim. (*CNA Casualty of California* v. *Seaboard Surety Co.*, *supra*, 176 Cal.App.3d at p. 605.) The duty to defend arises as long as the facts (either as expressed or implied in the third party's complaint or as learned from other sources) give rise to a potentially covered claim (*Fresno Economy Import Used Cars, Inc.* v. *United States Fid. & Guar. Co.* (1977) 76 Cal.App.3d 272, 279 [142 Cal.Rptr. 681]), even though the insurer's investigation produces facts showing the claim is baseless. It is the insurer's duty to prove the allegations false. (*CNA Casualty of California* v. *Seaboard Surety Co.*, *supra*, 176 Cal.App.3d at p. 606.) Finally, if an insurer is bound to defend an action based on the assertion of one covered claim, it must defend the entire action even though some portions of it involve noncovered claims. (*Hogan* v. *Midland National Ins. Co.* (1970) 3 Cal.3d 553, 564 [91 Cal.Rptr. 153, 476 P.2d 825].)

■ The foregoing authorities show the duty to defend is indeed a wide-ranging obligation. However, such duty, while broad, is not unlimited. Where there is no potential for the third party to recover on a covered claim, there is no duty to defend. (*Fire Ins. Exchange* v. *Jiminez* (1986) 184 Cal.App.3d 437, 440-442 [229 Cal.Rptr. 83]; *Dillon* v. *Hartford Acc. & Indem. Co.* (1974) 38 Cal.App.3d 335, 339-345 [113 Cal.Rptr. 396].)

■ ■■ With these general principles in mind, we must evaluate whether the evidence, viewed in the light most favorable to Devins,[5] showed as a matter of law that there was no potential for McNairs to assert a covered claim.

---

[5]The evidence at trial included testimony of plaintiff's expert, who opined USAA should have provided a defense because he "believed" the McNairs' complaint alleged facts which

## B. *There Was No Potential for McNairs to Assert a Covered Claim for Property Damage*

■ We first reject Devins' claim that there was a potentially covered claim for "property damage." The policy specifically limits coverage to occurrences causing property damage, and defines property damage as "physical injury to, destruction of, or loss of use of, *tangible* property."
■ Where a third party's suit alleges the insured's wrongful conduct caused only economic injury, and there is no suggestion of any wrongful conduct causing injury to tangible property, the insurer does not owe a defense, there being no damage or injury to tangible property within the meaning of the policy. (*Giddings* v. *Industrial Indemnity Co.* (1980) 112 Cal.App.3d 213, 218-220 [169 Cal.Rptr. 278].)

■ Here, McNairs alleged claims for intentional and negligent misrepresentation causing a pecuniary loss—the lost fair market value of the house.[6] Such an injury is not an injury to *tangible* property within the meaning of a liability policy, because damages for fraud are ordinarily

would constitute an "occurrence" or "accident" within the meaning of the policy, and also would constitute "property damage" and "bodily injury" within the meaning of the policy. USAA objected to this testimony, claiming it was an opinion which interpreted the terms of a written instrument—purely a legal conclusion. We agree. The interpretation of the scope of a policy is a question of law (*Bareno* v. *Employers Life Ins. Co.* (1972) 7 Cal.3d 875, 881 [103 Cal.Rptr. 865, 500 P.2d 889]; *Producers Dairy Delivery Co.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 912 [226 Cal.Rptr. 558, 718 P.2d 920]), as is whether an insured could reasonably expect a defense under the policy. (*Aim Insurance Co.* v. *Culcasi* (1991) 229 Cal.App.3d 209, 218 [280 Cal.Rptr. 766].) Experts may not opine on pure questions of law (*Communications Satellite Corp.* v. *Franchise Tax Bd.* (1984) 156 Cal.App.3d 726, 747 [203 Cal.Rptr. 779]), and expert opinions on legal questions do not inhibit a grant of nonsuit (*Elder* v. *Pacific Tel. & Tel. Co.* (1977) 66 Cal.App.3d 650, 664 [136 Cal.Rptr. 203]).

The dissent suggests a nonsuit was improper because we must accept the trial court's ruling admitting the opinion, a premise with which we disagree (see Code Civ. Proc., § 906 [respondent may raise errors committed against him to show judgment should be affirmed despite appellant's claims]). With such opinion as "evidence," the dissent concludes, a nonsuit was barred. The dissent overlooks the specific statement in *Nally* v. *Grace Community Church*, *supra*, 47 Cal.3d at page 291, that the propriety of a nonsuit depends on the evidence being given only such weight to which it is *legally* entitled, requiring us to disregard incompetent evidence to which a proper objection was lodged. Although the dissent claims *Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910 [148 Cal.Rptr. 389, 582 P.2d 980] validates expert testimony, the dissent fails to note that *Neal* did *not* involve opinions on the legal question of whether coverage existed (since coverage concededly was present in *Neal*), but instead involved opinions on questions concerning such factual issues as the promptness of the insurer's responses to settlement overtures. (*Id.* at pp. 921-924.) Opinions approving admission of expert testimony as to factual matters such as industry standards for dealing with covered claims cannot be read to authorize experts to opine in the first instance as to the existence of coverage.

[6]The dissent reasons there must have been injury to tangible property, and not mere economic harm, by emphasizing that USAA settled and paid McNairs $5,000, assertedly as "cost of repair" to the property. The dissent's characterization is both factually incorrect and

limited to recovery of economic injuries (see *Stout* v. *Turney* (1978) 22 Cal.3d 718, 725 [150 Cal.Rptr. 637, 586 P.2d 1228]), which the courts have repeatedly held are not injuries to *tangible* property within the scope of coverage of a liability policy. (See *Fresno Economy Import Used Cars, Inc.* v. *United States Fid. & Guar. Co. Inc.*, *supra*, 76 Cal.App.3d 272, 278-284; *Allstate Ins. Co.* v. *Interbank Financial Services* (1989) 215 Cal.App.3d 825, 830 [264 Cal.Rptr. 25]; *Warner* v. *Fire Ins. Exchange* (1991) 230 Cal.App.3d 1029, 1034-1035 [281 Cal.Rptr. 635]; *Allstate Insurance Co.* v. *Miller* (N.D.Cal. 1990) 743 F.Supp. 723.)

C.  *There Was No Potential for McNairs to Assert a Covered Claim for Bodily Injury*

Our review of the policies, together with the allegations of McNairs' complaint and the facts learned by USAA, also shows there was no possibility McNairs could assert a claim for bodily injury which would be covered under the policies.

First, even assuming McNairs could recover their emotional distress damages under the "bodily injury" coverages, any emotional distress they suffered could only have arisen *after* they took possession and discovered the falsity of the representations. These events all occurred after the Cavan Circle policy expired. Since the Cavan Circle policy only provided coverage for an " 'occurrence' . . . which results, *during the policy period*, in . . . bodily injury" (italics added), and the injury here occurred after the policy terminated, the Cavan Circle policy does not cover the injury. (See *Maples* v. *Aetna Cas. & Surety Co.* (1978) 83 Cal.App.3d 641, 647-650 [148 Cal.Rptr. 80] ["occurrence" policy covers injuries based on time of injury, not time of negligent act]; *Hallmark Ins. Co.* v. *Superior Court* (1988) 201 Cal.App.3d 1014, 1017-1019 [247 Cal.Rptr. 638] [same]; see also *State Farm Fire and Cas. Co.* v. *Neumann* (N.D.Cal. 1988) 698 F.Supp. 195, 196 [negligent

---

legally disingenuous. Factually, the "cost of repair" information estimated the cost at $28,000, a far cry from the final amount of the settlement. When the parties actually settled, there was no indication the $5,000 figure represented anything more than nuisance value, much less that it was the "cost of repair."

More importantly, the dissent's treatment of the settlement payment, as some sort of implied admission that coverage was owed, is disingenuous. USAA specified the payment to McNairs was to end McNairs' lawsuit, "would be without prejudice to USAA's coverage position, and would be based upon the specific agreement of the parties hereto that it would not constitute any admission of liability on the part of USAA for any indemnity payments." The settlement check was forwarded with a similar admonition. Despite this understanding, the dissent seeks to use this as a weapon against USAA. The dissent's approach would frustrate the very policy the dissent seeks to further, i.e., it would discourage insurers from settling with third parties for fear the settlement will become evidence against them in any coverage dispute.

misrepresentation: damages before sale fail under "property owned by insured" exclusion, and damages after sale fail because they occurred after policy terminated].)

Accordingly, even if the emotional distress suffered by McNairs could otherwise qualify as a covered claim, coverage must be found under the Basalto Street policy.[7] However, Devins' liability for such damages did not arise from activities at the *insured* location (Basalto Street), but was based on conduct at another location. In *Preston* v. *Goldman*, *supra*, 42 Cal.3d 108, the court rejected an analogous attempt to obtain coverage for injuries resulting from an insured's negligence in connection with a previously owned residence. The *Preston* court examined a policy which excluded, as does this one,[8] bodily injury " 'arising out of any premises, other than an insured premises, owned, rented or controlled by any Insured' " (*id.* at p. 120) where the injured party (a subsequent purchaser of a home formerly owned by the insured) suffered injury from the condition of the insured's former home. The court rejected coverage under the policy insuring the insured's present home, reasoning that the alleged injury-producing acts all "arose from" an uninsured premises and were thus not covered. (*Ibid.*) The court went on to note:

---

[7]The same analysis of noncoverage also applies to the creative musings of the dissent as to how a covered claim might have been asserted. The dissent, noting that Mr. Devin had been a carpenter and at trial saw pictures of the crawl space in the house, the workmanship of which he testified was "shoddy," claims the "only logical inference" to be drawn from those questions is that McNairs could have amended to state a claim for "simple negligence," which we can only interpret to mean a "negligent repair by Devin" theory. We disagree this is the *only* inference to be drawn from those questions, since Mr. Devin's knowledge of the defective repairs is also pertinent to the fraud claims, i.e., failure to disclose known problems. More importantly, however, the "negligent repair by Devin" theory was neither raised by the pleadings nor argued at trial.

Nor was the "negligent repair by Devin" theory raised by the parties in their appellate briefs. Since the "negligent repair by Devin" theory first appears in the dissent, the wisdom of the injunction against deciding cases on appeal based on matters not briefed by the parties (Gov. Code, § 68081) becomes clear: We can only speculate what USAA's response to this argument might have been had it been raised by Devins. We surmise, however, that even if such a claim had been raised by Devins, USAA could well have pointed to the various exclusions discussed in this section. That is, to the extent Mr. Devin's repairs caused damages which first appeared *before* he sold the house, they would be subject to the exclusion against personal liability coverage for damage to property owned by the insured. To the extent Mr. Devin's repairs caused damages which first appeared *after* he sold the house, they would not be covered under the Cavan Circle Policy because the injury would not have occurred while such policy was in effect. Nor would coverage be available under the Basalto Street policy for the reasons more particularly specified in *Preston* v. *Goldman*, (1986) 42 Cal3d 108 [227 Cal.Rptr. 817, 720 P.2d 476] i.e., it would be an injury arising out of an uninsured location.

[8]The exclusion here is substantively indistinguishable. It excludes from personal liability coverage those injuries "arising out of a premises: (1) owned by an insured; (2) rented by an insured; or (3) rented to others by an insured . . . that is not an insured location."

"Were this not the case, the premises exclusion would essentially become meaningless as to any property over which the insured may have at any time had control . . . . [¶] As a matter of 'Accepted popular, as well as legal, definition,' we believe that a renter or homeowner, and his insurer, would not ordinarily intend or reasonably expect coverage for the accident such as the one involved here under policy terms similar to those relied upon here." (42 Cal.3d at pp. 120-121.)

■ We find the *Preston* rationale convincing and controlling. Homeowners' policies are ordinarily designed to provide first party casualty coverage for damages to the home, and third party liability coverage when conduct or an accident occurring on the insured premises injures third persons. (See generally, *Warner* v. *Fire Ins. Exchange, supra,* 230 Cal.App.3d 1029, 1032-1036.) Where conduct occurs *away* from the insured premises, we perceive neither an intent to provide coverage nor a reasonable expectation of providing coverage.[9]

■ Yet another reason supports the conclusion there was no potential for the assertion of a covered claim: McNairs' complaint in fact did not assert a claim against the insureds for emotional distress which caused physical injury,[10] *and as a matter of law McNairs could not recover such from the insureds.* McNairs' claims rested on two theories: intentional

---

[9] The federal courts are in accord. In *State Farm Fire & Cas. Co.* v. *Thomas* (N.D.Cal. 1991) 756 F.Supp. 440, the court evaluated a claim identical to that asserted here: whether misrepresentation in the sale of a prior home could be covered under a homeowners' policy on the seller's new home. The *State Farm* court, relying heavily on *Preston,* concluded the injuries "arose from" the former home (an uninsured premises under the later policy), and rejected the insured's claim that because he did not own the former premises at the time the injury arose, the exclusion for uninsured premises did not apply. The *State Farm* court rejected such an interpretation because it would make a later insurer liable for injuries arising out of *any* formerly owned premises, even though the policy was designed to cover liability only for injuries connected to currently owned premises. Under *Preston,* the *State Farm* court concluded, no insured or insurer would reasonably expect coverage for conduct which occurred at previously owned premises absent explicit coverage to the contrary. (*Id.* at pp. 444-445; cf. *American Empire Surplus Lines Ins.* v. *Bay Area Cab* (N.D.Cal. 1991) 756 F.Supp. 1287, 1289-1290 [premises policy does not cover injuries occurring away from insured premises].)

[10] Although the complaint pleaded both emotional and physical distress, it originally sought such recovery from parties other than Devins. McNairs never told USAA they sought damages for emotional distress *causing physical injury* as against the insured; instead, USAA understood from the investigation there was no bodily injury "except mental." A claim for mental distress unaccompanied by physical injury is not "bodily injury" within the terms of a liability policy. (*Aim Insurance Co.* v. *Culcasi, supra,* 229 Cal.App.3d at pp. 224-228 ["bodily injury" does not encompass mere emotional distress, and there was no duty to defend absent notice of facts suggesting emotional injury also included physical injury].) Although Devins claim *United Pacific Ins. Co.* v. *McGuire Co.* (1991) 229 Cal.App.3d 1560 [281 Cal.Rptr. 375] disagreed with *Aim Insurance,* the *United Pacific* court rested its holding on an entirely

fraud and negligent misrepresentation. Devins concede the former allegations would not give rise to a duty to defend because of the intentional acts exclusion. We therefore examine only the negligent misrepresentation allegations. Numerous courts, beginning with *Newman* v. *Smith* (1888) 77 Cal. 22 [18 P. 791] and continuing through *Sierra Nat. Bank* v. *Brown* (1971) 18 Cal.App.3d 98 [95 Cal.Rptr. 742] and *O'Neil* v. *Spillane* (1975) 45 Cal.App.3d 147, 158-159 [119 Cal.Rptr. 245], have repeatedly advised that damages for emotional distress do not constitute a recoverable item of damages for fraud. (*Newman, supra,* at p. 27; *Sierra Nat. Bank, supra,* at p. 103; *O'Neil, supra,* at p. 159; see also *In re Marriage of McNeill* (1984) 160 Cal.App.3d 548, 559 [206 Cal.Rptr. 641]; *Adriana Intern. Corp.* v. *Thoeren* (9th Cir. 1990) 913 F.2d 1406, 1415.) These authorities, among others, have consistently ruled that fraud in the purchase, sale or exchange of property is limited to those damages specified by Civil Code section 3343, which does not include emotional distress. (*Stout* v. *Turney* (1978) 22 Cal.3d 718, 725-726 [150 Cal.Rptr. 637, 586 P.2d 1228]; see also *Kruse* v. *Bank of America* (1988) 202 Cal.App.3d 38, 67 [248 Cal.Rptr. 217]; *Channell* v. *Anthony* (1976) 58 Cal.App.3d 290, 315 [129 Cal.Rptr. 704].) The federal courts are in accord. (See *American States Insurance Company* v. *Canyon Creek* (N.D.Cal. 1992) 786 F.Supp. 821 [no coverage for fraud in sale of real property because no injury to tangible property and emotional distress not recoverable under Civ. Code, § 3343].)

██ Here, the negligent act (the misrepresentation) caused only economic harm. Even apart from the special limitations on fraud damages under Civil Code section 3343, it is the general rule that negligence which causes only monetary harm does *not* support an award of emotional distress damages. (See *Quezada* v. *Hart* (1977) 67 Cal.App.3d 754, 761-763 [136 Cal.Rptr. 815] [where gravamen of action is negligence, causing only monetary harm, damages do not include emotional distress]; *Cooper* v. *Superior Court* (1984) 153 Cal.App.3d 1008, 1012-1013 [200 Cal.Rptr. 746] [negligent infliction of property damage to home does not support award of emotional distress damages].)

Since there was no possibility McNairs could recover on a claim for bodily injury on the facts (either as pleaded, later learned or even potentially assertable), there was no duty to defend.

## DISPOSITION

The judgment is affirmed.

Huffman, Acting P. J., concurred.

---

unrelated ground. As to the *Aim Insurance* issue, the *United Pacific* court specifically stated ". . . we express no opinion on this issue." (*Id.* at p. 1563.)

**NARES, J.**—I respectfully dissent. The Devins purchased a home in Huntington Beach and obtained an all risk homeowners' policy from United Services Automobile Association (USAA). In 1984, the Devins sold the home to the McNairs and purchased another home in Carlsbad. Their homeowners' insurance policy with USAA had been renewed annually since 1981 and basically contained identical indemnity and defense provisions. The relevant portions of the policies provide:

"Coverage E—Personal Liability. [¶] If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage based on an occurrence to which this coverage applies, we will: [¶] 1. pay up to our limit of liability for the damages for which the insured is legally liable; [¶] and 2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

" 'Occurrence' means an accident, including exposure to conditions, which results, during the policy period, in: a. bodily injury; or b. property damage.

". . . 'Property damage' means physical injury to, destruction of, or loss of use of tangible property."

Personal liability coverage was excluded for liability on contracts, except "written contracts . . . that directly relate to the ownership . . . of an insured location."

"Accident" is not defined in the USAA policies, but in a "Quick Reference Policy Summary" provided to the Devins by USAA, it states:

"This policy insures your home and other structures located on and appertaining to your residence premises. In addition, this policy gives you coverage for your personal property and provides financial protection when you are held liable for damage to the property of others or for injury to others—both on and off your property."

In July 1986, the McNairs sued the Devins, alleging the house was damaged by sliding, slipping, settling, sinking, fracturing and buckling. The McNairs further alleged the Devins "knew or should have known, that the property had experienced extensive subsidence damage and that said subsidence problems were continuing, and would continue to cause severe structural damage to the house and the property." According to the McNairs'

complaint, the Devins did not disclose these conditions, causing them property damages as well as damages for emotional and physical distress. The factual basis for these allegations is unclear, and there are no dates set forth in the McNairs' complaint regarding when the subsidence and damages supposedly occurred.

The Devins denied these allegations. USAA did not dispute the Devins' denials. There was never any resolution of the McNairs' complaint on the merits. Instead, USAA rejected the Devins' tender of the McNairs' action on numerous grounds. After the Devins filed this bad faith action, USAA paid the McNairs' claims for *cost of repair* but refused to reimburse the Devins for the attorney fees and costs of $3,900.24 they had incurred in defending the McNairs' complaint.

The case proceeded to trial, and the trial court granted USAA's motion for nonsuit. The majority admits the nonsuit was granted for the wrong reason, but nevertheless affirms.

In reaching that result, the majority states and then disregards the applicable standard of review established by our Supreme Court " 'requiring evaluation of the evidence in the light most favorable . . . to plaintiff's case and most strongly against the defendant and resolving all presumptions, inferences and doubts in favor of . . . plaintiff.' " (*Nally* v. *Grace Community Church* (1988) 47 Cal.3d 278, 291 [253 Cal.Rptr. 97, 763 P.2d 948], quoting *Carson* v. *Facilities Development Co.* (1984) 36 Cal.3d 830, 839 [206 Cal.Rptr. 136, 686 P.2d 656].) The majority does so by limiting the facts and record presented, focusing only on those which support USAA. Further, in footnote 5 at pages 1157-1158, *ante*, the majority "agrees" with USAA's objection to the plaintiffs' expert witness' testimony, despite the trial court's having overruled the objection. There is no basis for the majority's disregarding the trial court's ruling. Our Supreme Court in *Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 924 [148 Cal.Rptr. 389, 582 P.2d 980] specifically held such expert opinion admissible by "one who, by profession and experience, was peculiarly equipped to evaluate such matters in the context of similar disputes." The Devins' expert was qualified, and under Evidence Code section 801, his testimony was properly admitted. The expert's testimony is undisputed that the third party complaint against the plaintiffs (the Devins) alleged facts which were an "occurrence" or "accident" within the meaning of the policy and would also constitute property damage and bodily injury as defined by the policy.

Even if this testimony were insufficient, the majority should hardly be able to claim there was no "bodily injury." The trial court itself found the

complaint against the Devins alleged "bodily injury." Although this is a factual question, the majority apparently decides it as a matter of law, completely omitting the trial court's finding from its opinion. Instead, according to the majority, the third party complaint sought only economic damages, i.e., loss of value. The majority does not support this statement with citation to the record, because the record does not support this conclusion. USAA paid the third party's claim for *cost of repair* to property which had been covered by a policy issued by USAA to the Devins.[1]

The underlying case against the Devins encompassed more than just misrepresentation claims. This is not a situation in which the issue is whether the Devins misrepresented the condition of the premises to the McNairs, despite the McNairs' pleadings. In a recorded statement requested by USAA, the Devins informed USAA that the McNairs had removed a very large palm tree adjacent to the side of the building where the McNairs were now alleging subsidence and property damage had occurred. USAA did not investigate the effect, if any, the removal would have on the house. Further, Robert Devin testified during trial that he had previously been a carpenter and involved in construction. When shown pictures of an attempted repair of the house in a crawl space, he testified the work was shoddy. The record is clear that the McNairs were actually seeking damages for costs of repair,

---

[1] The record reflects the McNairs offered to settle their claims against the Devins for $28,000—the *costs of repair* only. USAA rejected this offer by letter dated September 28, 1987. It was not until the Devins filed their bad faith action that USAA paid the $5,000. The majority's statement that USAA paid the $5,000 as and for "nuisance value" is not supported by the record. In fact, USAA paid the McNairs' claim after the Devins rejected USAA's offer to advance the sums necessary to settle the McNair case on certain conditions. In their reply brief, the Devins correctly note this type of letter can by itself support "USAA's bad faith effort to coerce a release of claims against it, in return for settling the underlying claim." (See *White* v. *Western Title Ins. Co.* (1985) 40 Cal.3d 870, 886 [221 Cal.Rptr. 509, 710 P.2d 309].)

In his declaration filed in opposition to USAA's motion for summary judgment/summary adjudication of issues and again at trial, Michael T. McCall, counsel for the McNairs, testified that "[a]t no time did anybody from USAA or anyone purporting to act on their behalf question me about the type of damages sought by the McNairs from the Devins." The majority admits, on page 1155, *ante,* that the Devins made USAA aware that the McNairs were asserting "claims for property damage and bodily injury." Yet, the majority disregards USAA's failure to investigate exactly what claims were being alleged. Despite this failure to investigate, the majority admits, on page 1155, *ante,* that at trial, "the examiner for USAA stated he did not know when the property damage began, but it conceivably began after the property had been sold."

In the recorded statement requested by USAA, their adjuster asked Robert Devin if Devin had made any repairs in the crawl space. During trial, Devin was again asked about repairs he had made or caused to have had made during his ownership of the property. The only logical inference which I draw from this line of questioning is that the McNairs could have amended the complaint to allege a simple cause of action for negligence. Instead, the majority sets forth various exclusions which USAA argues could apply. However, since the case never proceeded further than a nonsuit on concededly wrong grounds, I would reverse and allow the parties to present these arguments to a trier of fact, and not to this court, for resolution.

because they believed that Devin either negligently did the work of repair or caused it to be done.

Thus, none of the cases dealing with the question of whether negligent misrepresentation is or is not a covered claim are relevant. The majority acknowledges the distinction between the pleadings and the facts as they existed at the time of trial, but chooses to disregard them. Instead, the majority establishes a narrow definition of the words "property damage." However, this narrow definition has been specifically rejected by our Supreme Court in *AIU Ins. Co.* v. *Superior Court* (1990) 51 Cal.3d 807 [274 Cal.Rptr. 820, 799 P.2d 1253]. Additionally, to the extent decisions from the federal courts are relevant, they too have rejected the narrow interpretation of the words "property damage" which the majority contends applies here. *(Aetna Cas. & Sur. Co., Inc.* v. *Pintlar Corp.* (1991) 948 F.2d 1507, 1513.) Certainly, construing "property damage" as a layperson would read it—as we must—the Devins would have reasonably expected USAA to indemnify them for costs of repairing the residence since there was no investigation of when subsidence occurred. USAA did, in fact, pay the claim. Yet, the majority disregards this fact as well as others in this record. I cannot agree with such a narrow reading of the words "property damage."

Additionally, where, as here, the testimony as well as the superior court's findings undisputedly establishes that the McNairs were seeking damages for both "property damage" and "bodily injury," manifestly, USAA had a duty to defend the Devins.

For the first time, where, as here, there is a potential claim for coverage triggering the duty to defend, the majority allows the insurer to unilaterally decide whether it has a duty to defend its insureds without any prior judicial determination. Although the duty to defend is concededly broader than the duty to indemnify, this insurer indemnified but refused to defend. The majority rewrites the long-established insurance law in this opinion. (See *State Farm etc., Ins. Co.* v. *Superior Court.* (1956) 47 Cal.2d 428 [304 P.2d 13]; *General Ins. Co. of America* v. *Whitmore* (1965) 235 Cal.App.2d 670 [45 Cal.Rptr. 556]; *Allstate Ins. Co.* v. *Fisher* (1973) 31 Cal.App.3d 391 [107 Cal.Rptr. 251].)

I would, therefore, reverse the granting of the nonsuit.

Appellants' petition for review by the Supreme Court was denied August 20, 1992. Mosk, J., was of the opinion that the petition should be granted.