91 F.3d 152
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
The IRVINE COMPANY, a Michigan corporation, Plaintiff-Appellant,
v.
GREAT AMERICAN INSURANCE COMPANY, Defendant-Appellee.
 No. 94-56358.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 5, 1996.
Decided July 29, 1996.
 
 Before: FLETCHER, BEEZER and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The Irvine Company ("TIC") appeals a grant of summary judgment in favor of Great American Insurance Company. TIC brought suit when Great American refused to defend TIC in several suits brought by TIC's tenants in a shopping center development. The district court had jurisdiction based on diversity of citizenship. TIC timely appeals, and we have jurisdiction under 28 U.S.C. § 1291. We affirm.
 
 
 3
 * TIC developed the Irvine Marketplace Shopping Center ("the Marketplace"). In seeking tenants for the Marketplace, TIC allegedly made a number of promises and representations to prospective tenants regarding the further development of the Marketplace as a high-end shopping mall that it did not ultimately fulfill. TIC was sued by disgruntled tenants in two lawsuits in Orange County Superior Court: The Irvine Company v. Esther Gallant, and related cross-complaint, OCSC Case No. 656520 ("Gallant ") and DeVan, Inc. v. The Irvine Company, OCSC No. 533325 ("DeVan "). Following is a synopsis of the two suits. A more complete description may be found in the district court's Amended Statement of Uncontroverted Facts.
 
 
 4
 In Gallant, on May 2, 1991, TIC filed an action against tenants for back rent. The tenants in that action filed a cross-complaint. In the third amended cross-complaint, filed June, 1992, the tenants asserted four causes of action: Fraud and Deceit; Negligent Misrepresentation; Unfair Trade Practice; and Rescission. The tenants alleged (1) that TIC willfully, fraudulently and maliciously made misrepresentations and omissions intentionally to induce the tenants to enter into leases at the Marketplace and remain as tenants there; (2) that these misrepresentations and omissions affected the value and desirability of the rental premises; and (3) that the tenants were burdened with a leasehold substantially inferior to the one for which they bargained. The tenants' second amended cross-complaint additionally alleged causes of action for negligence, breach of contract, conspiracy, breach of the duty of good faith and fair dealing, breach of warranty and negligent and intentional interference with prospective economic advantage. None of the tenants in Gallant terminated their leases or vacated the Marketplace until after the expiration of the policies in 1987.
 
 
 5
 In DeVan, filed August 26, 1987, the plaintiff, a Marketplace tenant, alleged one cause of action: Fraudulent Inducement to Enter Into a Contract. The DeVan plaintiff also remained in possession until after the expiration of the Great American comprehensive general liability policies ("CGL policies") issued to TIC. TIC settled DeVan in June, 1991, for $437,000.
 
 
 6
 During the period June 30, 1984 to June 1, 1987, the CGL policies insured TIC against property damage and personal injury liability. TIC first tendered defense of Gallant to Great American on October 8, 1991, under the second amended cross-complaint. TIC re-tendered the defense to Great American after the third amended cross-complaint was filed. TIC first tendered the defense of DeVan to Great American on December 9, 1991 (after it had voluntarily settled the action with its own funds).
 
 
 7
 Great American denied TIC's requests for defense and indemnity. TIC brought suit in Orange County Superior Court, seeking to establish Great American's duty to defend. Great American removed the action to federal court, basing jurisdiction on diversity of citizenship. In response to cross-motions for summary judgment, the district court granted summary judgment in favor of Great American on August 30, 1994. TIC filed a request for oral argument on August 31, 1994, and a notice of appeal on September 1, 1994.
 
 II
 
 8
 We review de novo a grant of summary judgment. Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, 116 S.Ct. 1261 (1996).
 
 
 9
 An insurer has a duty to defend its insured against legal claims for which the insured may potentially be liable. When there is no potential liability under a policy, the insurer has no duty to defend its insured. Allstate Ins. Co. v. Chaney, 804 F.Supp. 1219, 1221 (N.D.Cal.1992).
 
 
 10
 Under California law, the insured has the burden of establishing that a loss comes within the basic scope of coverage. Chamberlain v. Allstate Ins. Co., 931 F.2d 1361, 1364 (9th Cir.1991). "[I]f the Court finds that the policy provides no coverage for the damages sought against the insured, the insurer need not provide the insured with a defense, and summary judgment in the insurer's favor is proper." Chaney, 804 F.Supp. at 1221 (internal citations omitted).
 
 III
 
 11
 Great American provides two types of coverage that are relevant to this action: property damage coverage and personal injury coverage. Neither type of coverage required Great American to defend TIC in Gallant or DeVan.
 
 
 12
 * With respect to property damage, the policies provide, in relevant part, that Great American will:
 
 
 13
 pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of property damage caused by an occurrence.
 
 
 14
 "Property damage" is defined as:
 
 
 15
 (1) physical injury to or destruction of tangible property which occurs during the policy period including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period.
 
 
 16
 At issue in this case is whether the tenants' injuries constitute "loss of use of tangible property," as that term is used in the policies.
 
 
 17
 Tangible property is defined in California case law as "having physical substance apparent to the senses." Warner v. Fire Ins. Exchange 281 Cal.Rptr. 635, 638 (Ct.App.1991) (quotation omitted). Economic damages "arising out of an insured's negligent misrepresentation do not constitute damage to 'tangible' property." Id. "[T]o construe the explicit words 'tangible property' to include intangible economic interests and property rights requires a strained and farfetched interpretation, doing violence to the plain language of the policies." Id. (quotation omitted); see also Giddings v. Industrial Indemnity Co., 169 Cal.Rptr. 278, 281 (Ct.App.1980) ("[S]trictly economic losses like lost profits, loss of goodwill, loss of the anticipated benefit of a bargain, and loss of an investment, do not constitute damage or injury to tangible property covered by a comprehensive general liability policy."); New Hampshire Ins. Co. v. Vieira, 930 F.2d 696, 701 (9th Cir.1991) ("[D]iminuition in value is not 'physical damage' to 'tangible property,' and hence is not covered."); Safeco Ins. Co. v. Andrews, 915 F.2d 500 (9th Cir.1990) (same).
 
 
 18
 The district court correctly concluded that the causes of action alleged in DeVan and Gallant constitute damage to intangible economic interests, not property damage. This case falls squarely within the rationales of Warner, 281 Cal.Rptr. 638, Chaney, 804 F.Supp. 1219, Andrews, 915 F.2d 500, and Vieira, 930 F.2d 696. Under these cases, California law is clear that economic damages for misrepresentation and the like are not "property damage" under policy clauses like the one at issue in this case.
 
 B
 
 19
 With respect to personal injury, the policies provide, in relevant part, that Great American will:
 
 
 20
 pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury caused by an occurrence.
 
 
 21
 "Bodily injury" is defined to include:
 
 
 22
 personal injury committed in the conduct of the named insured's business.... When used in this policy, personal injury means: ... wrongful entry or eviction, or other invasion of the right of private occupancy ... if such offense is committed during the policy period....
 
 
 23
 At issue here is whether TIC's alleged wrongdoing constitutes "other invasion of the right of private occupancy."
 
 
 24
 California courts have defined the phrase "other invasion of the right of private occupancy" to encompass actions of the same general type as, though not specifically embraced within, wrongful entry or eviction. Waranch v. Gulf Ins. Co., 266 Cal.Rptr. 827, 829 (Ct.App.1990). In Titan Corp. v. Aetna Cas. & Sur. Co., 27 Cal.Rptr.2d 476 (Ct.App.1994), the court stated that " 'other invasion' should be interpreted to mean the functional equivalent of 'wrongful entry or eviction.' " Id. at 487. The court noted that "wrongful entry or eviction" "connotes disruptions of the ability of a landowner to actually occupy his property, not mere injuries to property." Id.
 
 
 25
 At oral argument, TIC cited the recent case of Martin Marietta Corp. v. Ins. Co. of North America, 47 Cal.Rptr.2d 670 (Ct.App.1995). At issue in Martin Marietta was whether liability under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) to clean up groundwater and other pollution fell within the scope of policy language covering liability for "wrongful entry or eviction, or other invasion of the right of private occupancy." The court criticized Titan 's holding that the clause required "disruption of the ability of a landowner to actually occupy his property," insofar as such a requirement would exclude coverage for trespass and similar claims that do not deprive the landowner of possession, but nonetheless interfere with possessory rights. The court held that "wrongful entry" includes trespass claims and may also include nuisance claims. The court also held that "other invasion of the right of private occupancy," when ambiguous, may include claims for nuisance and the like.
 
 
 26
 Martin Marietta is not applicable to this case because none of the tenants' claims in Gallant and DeVan are supported by any facts that could even arguably be characterized as nuisance or trespass.
 
 
 27
 Likewise, the DeVan and Gallant complaints do not allege that TIC engaged in conduct that resulted in "disruptions" to the tenants' ability to "actually occupy" their property, as required by Titan. Rather, the tenants allege that TIC sought fraudulently to induce them to enter into leases and remain in occupancy. The district court concluded that these allegations make no showing of a potential for coverage for personal injury.
 
 
 28
 TIC argues that its failure to provide sufficient parking, negligent design of traffic flow patterns and failure to bring in tenants is distinguishable from conduct in Titan and is the "functional equivalent" of constructive eviction, which would constitute an "other invasion," citing Clark v. Speigel, 99 Cal.Rptr. 86, 88 (Ct.App.1971) (when landlord induces tenant to lease premises in shopping center by promising to keep the center's parking lot properly maintained and well lit, the landlord's failure to keep these promises, resulting in adverse effect on the tenant's business, constitutes constructive eviction); Sierad v. Lilly, 22 Cal.Rptr. 580 (Ct.App.1962) (constructive eviction found where landlord interfered with retail tenant's rights to customer parking, traffic ingress and egress, storage space, and water supply).
 
 
 29
 Under California law, a constructive eviction occurs at the time possession is surrendered. Petroleum Collections v. Swords, 122 Cal.Rptr. 114, 117 (Ct.App.1979). None of the tenants in Gallant or DeVan surrendered possession until after the expiration of the policy periods. Even if TIC's conduct amounted to constructive eviction, such constructive eviction did not occur during the policy period and is therefore not covered. In the Gallant and DeVan cases, possession was surrendered after the expiration of the policy period. No "invasions" were committed during the policy period.
 
 
 30
 TIC further argues that "other invasion of the right of private occupancy" is ambiguous, citing American States Ins. Co. v. Canyon Creek, 786 F.Supp. 821, 829 (N.D.Cal.1991) and out-of-circuit authorities. Because the phrase is ambiguous, TIC argues, it should be construed against the insurer. In American States, insurer sued insured, a seller of manufactured homes, for declaratory relief from duties to defend or indemnify insured in a state court suit for negligent misrepresentation. Specifically, plaintiffs in the state court action alleged that they were led by insured to believe that they would have the right to own and occupy the real property on which their mobile homes were located, and that they were led to believe that Napa County officials would approve the housing development as a subdivision. In the context of these misrepresentations, the American States court held "other invasion of the right of private occupancy" to be ambiguous. Because the American States misrepresentations were more closely bound up with rights of occupancy than the misrepresentations in this case, and because ambiguity depends on context of usage, see Waller v. Truck Ins. Exch., 900 P.2d 619, 44 Cal.Rptr.2d 370 (Cal.1995), this case may be distinguished from American States. The finding of ambiguity in Martin Marietta is similarly context-dependent. The out-of-circuit authorities cited by TIC are not on point.
 
 C
 
 31
 Finally, TIC argues that Great American should be bound in this litigation by the interpretation advocated by Great American's sister company, American National Fire Insurance Company, in litigation unrelated to this case. Such a prior, unrelated interpretation is irrelevant. See AIU Ins. Co. v. Superior Court, 799 P.2d 1253, 1266 n. 9, 274 Cal.Rptr. 820, 833 n. 9 (Cal.1990).
 
 
 32
 We affirm the district court's holding that the wrongs alleged in Gallant and DeVan are not "personal injuries" within the meaning of the policies.
 
 IV
 
 33
 TIC alleges that the district court erred in granting summary judgment without benefit of oral argument. It appears from the docket sheet and TIC's counsel's declaration that the cross-motions for summary judgment were automatically scheduled for oral argument when they were filed. Oral argument was scheduled for August 29, 1994, but was cancelled by the district court on August 25. TIC subsequently requested oral argument, then filed a notice of appeal before the district court had an opportunity to rule on the request for oral argument. This is apparently the only request TIC made for oral argument. TIC abandoned this request the next day by filing a notice of appeal, effectively depriving the district court of jurisdiction. See Merritt-Chapman & Scott Corp. v. City of Seattle, 281 F.2d 896, 899 (9th Cir.1960).
 
 V
 
 34
 The claims encompassed in Gallant and DeVan are not the types of wrongs covered by the insurance policies. The district court properly granted summary judgment.
 
 
 35
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3