PHASE II TRANSPORTATION, INC.

v.

CAROLINA CASUALTY INSURANCE COMPANY

CV 15–03596–SVW–MRW

United States District Court, C.D. California.

Signed 01/19/2017

Timothy William Kenna, Jesse D. Marr, John J. Moura, Richard E. Wirick, Gilbert, Kelly, Crowley and Jennett LLP, Los Angeles, CA, for Phase II Transportation, Inc.

Robert D. Hoffman, Charlston, Revich and Wollitz LLP, Los Angeles, CA, for Carolina Casualty Insurance Company.

IN CHAMBERS ORDER GRANTING SUMMARY JUDGMENT FOR CAROLINA CASUALTY INSURANCE COMPANY AND DENYING SUMMARY JUDGMENT FOR PHASE II [25] [26]

STEPHEN V. WILSON, UNITED STATES DISTRICT JUDGE

Having read and considered the papers presented by the parties, the Court finds this matter suitable for determination without oral argument. *See* Fed. R. Civ. P. 78; Local Rule 7–15. Accordingly, the hearing scheduled for January 23, 2017 at 1:30 p.m. is VACATED and OFF CALENDAR.

## I. INTRODUCTION

Plaintiff Phase II Transportation, Inc., ("Phase II" or "Plaintiff") brings this claim against Defendant Carolina Casualty Insurance Company ("CCIC" or "Defendant"). Dkt. 1. Phase II claims that CCIC, its insurance company, failed to defend an underlying lawsuit, and thus Phase II seeks reimbursement for its defense costs. CCIC asserts a counterclaim against Phase II claiming that CCIC paid for a settlement with a reservation of rights, and that the settlement was not covered by the insurance policy. Dkt. 22. Thus, CCIC seeks a reimbursement of these settlement expenses.

## II. FACTUAL BACKGROUND

CCIC provides insurance coverage for Phase II subject to some exclusions. Specifically, there is a Wage and Hour Exclusion, which states:

### IV. Additional Exclusions

In addition to the Exclusions listed in section IV. of the Common Policy Terms and Conditions Section, the **Insurer** shall not be liable to make any payment or for **Loss** in connection with a **Claim** made against any **Insured:**

\* \* \*

I. based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any Federal, State, local or foreign wage and hour laws, including, without limitations, the Fair Labor Standards Act, provided, however, this exclusion shall not apply to any Claim for any actual or alleged retaliatory treatment of the claimant by the Insured on account of the claimant's exercise of right pursuant to any such law or amounts owed under the Equal Pay Act of 1963.

Dkt. 29–1, Exh. A (emphasis in original).

The facts relevant for this case begin on December 5, 2012, when a former Phase II employee Cervando Robles issued a written demand letter against Phase II claiming to have been misclassified as an independent contractor when he should have been classified as an employee. *See* dkt.

26–2, Exh. 2. Phase II tendered the demand letter to CCIC's claims handler Monitor Liability Managers ("Monitor"), which denied coverage based on its determination there was no "Wrongful Act" and that the Wage and Hour Exclusion applied. *See* dkt. 26–2, Exh. 3. On December 9, 2013, Robles filed a class action lawsuit in San Bernardino Superior Court ("Robles Lawsuit") asserting the same theory of misclassification. Monitor denied coverage for the same reasons. Therefore, CCIC did not initially tender a defense to this lawsuit.

Specifically, the Robles Lawsuit alleged violations of California Labor Code §§ 226.7 and 512 (Denial of Meal Breaks). § 226.7 (Denial of Rest Breaks), § 204 (Failure to Timely Pay Wages for Hours Worked), § 2802 (Unpaid Work-related Expenses), § 510 and 1194 (Failure to Pay Overtime), § 1194 and 558 (Failure to Pay Minimum Wages), § 201–203 (Waiting Time Penalties), § 221 and 219 (Unlawful Deduction of Wages), and Business & Professions Code §§ 17200 *et seq.*[1]

On May 8, 2013, Nayael Mendoza and others issued a written demand letter against Phase II for unpaid wages. Dkt. 26–1 at 7. Phase II tendered the letter to Monitor, and Monitor denied coverage. On September 4, 2014, the Mendoza plaintiffs filed a lawsuit against Phase II ("Mendoza Lawsuit") in Los Angeles Superior Court. Phase II tendered the lawsuit to Monitor, and Monitor accepted the defense of this action, subject to a reservation of rights. Monitor's acceptance was based on coverage for intentional fraud and negligent misrepresentation claims.

Specifically, the Mendoza lawsuit alleged much of the same Wage and Hour claims as the Robles Lawsuit, plus additions claims for Fraud by Intentional Misrepresentation, Concealment and False Promises, and Negligent Misrepresentation. *See* dkt. 26–2, exh. 6.

On February 22, 2015, Phase II retendered the Robles Lawsuit to CCIC. On April 24, 2015, CCIC agreed to defend the Robles Lawsuit under a reservation of rights. *See* dkt. 26–2, exh. 9. CCIC determined that the Robles Lawsuit was related to the Mendoza Lawsuit and therefore fell under a Related Claim provision of the insurance policy. *See id.* CCIC did not agree to reimburse Phase II for previous defense costs incurred.

CCIC then defended both the Robles and Mendoza Lawsuit. Phase II settled both cases in 2015–2016 and CCIC indemnified both these settlements. CCIC paid $354,000 towards the Robles settlement. Relevant for these purposes, the Phase II and Robles settlement specified that "the plaintiffs have requested, and [ ] Defendant agrees, [that] the settlement shall be allocated 100% to covered claims, i.e. negligence, misrepresentation, and retaliation." *See* dkt. 25 at 15/36. However, it is also undisputed that CCIC took no part in this settlement negotiation and that the Roble Lawsuit never alleged claims of negligence, misrepresentation, or retaliation.

■ In these cross-motions for summary judgment, Phase II seeks a judgment that CCIC had a duty to defend the Robles Lawsuit at the date of tender of the Robles demand letter. Phase II also seeks *Brandt* fees.[2] CCIC seeks a judgment that

---

1. The parties do not dispute that all but one of the Labor Code claims are "Wage and Hour" claims, and thus fall within the Exclusion. However, the parties dispute whether the reimbursement claim under Labor Code § 2802 is a "Wage and Hour" claim.

2. *Brandt v. Superior Court.* 37 Cal.3d 813, 210 Cal.Rptr. 211, 693 P.2d 796 (1985) allows an insured to recover attorney fees in a lawsuit against the insurance company if the insurer acted in bad faith. Since the Court finds for the insurer CCIC on all counts, the request for *Brandt* fees is DENIED.

they had no duty to defend the Robles Lawsuit prior to tender of the Mendoza action. CCIC also seeks a judgment that it is entitled to reimbursement for the $354,000 settlement payment to Robles. For the following reasons, the Court GRANTS the summary judgment motion for CCIC in its entirety.

## III. LEGAL STANDARDS

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining a motion for summary judgment, all reasonable inferences from the evidence must be drawn in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Id.* at 248, 106 S.Ct. 2505. However, no genuine issue of fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## IV. ANALYSIS

The three specific issues in dispute, relevant for the Court's judgment, are: (A) whether § 2802 is a "Wage and Hour" law and thus is covered by the Wage and Hour Exclusion, (B) whether the Robles Lawsuit had a potential for coverage due to potential misrepresentation or retaliation claims, and (C) whether CCIC is bound by the Robles settlement, which purported allocated its payout to "covered claims" under the insurance policy.

### A. Whether § 2802 is a Wage and Hour Law

■ California Labor Code § 2802 provides that, "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." The Robles Lawsuit sought reimbursement pursuant to this law for expenditures that were necessary to their work as truck drivers for Phase II. This claim was prominent from the beginning of the Robles action, thus if it does not fall under the Wage and Hour Exclusion CCIC would have had a duty to defend the lawsuit from the beginning. Conversely, if it does fall under the Wage and Hour Exclusion then *all* claims explicitly alleged in the lawsuit would fall squarely within the Exclusion.

The parties direct the Court's attention to a district court split on whether § 2802 is considered a Wage and Hour law for the purpose of a Wage and Hour exclusion in insurance contracts. The Central District of California decided in *Admiral Ins. Co. v. Kay Auto. Distributors, Inc.*, 82 F.Supp.3d 1175 (C.D. Cal. 2015) (*"Kay"*) that § 2802 is a Wage and Hour law and therefore subject to the exclusion. The Southern District of California decided in *Hanover Ins. Co. v. Poway Acad. of Hair Design, Inc.*, No. 15CV536 BTM, 2016 WL 6698936 (S.D. Cal. Nov. 14, 2016) that § 2802 is not a Wage and Hour law and not subject to the exclusion.

In *Kay*, an insurer and insured disputed coverage of an underlying lawsuit. In the underlying lawsuit. Plaintiff was a delivery person that worked for Defendant. *Kay*, 82

F.Supp.3d at 1177. Plaintiff alleged that Defendant required workers to make deliveries off the clock, skip meal and rest breaks, and other wage and hour violations. *Id.* Plaintiff also alleged that Defendant failed to reimburse him for business expenses. *Id.* The *Kay* court considered whether § 2802 was a Wage and Hour law for purposes of a Wage and Hour exclusion clause nearly identical to the one in this case. *Id.* at 1181–82. The court noted there were "nontrivial arguments that § 2802 does not fall within the meaning of 'wage and hour laws.'" *Id.* at 1181. The court said that the language of the statute does not directly "touch on wages paid or hours worked" and that the statute does not "fall under Division 2 of the Labor Code, which contains the minimum wage, overtime, rest period, payment timing, and record-keeping provisions listed above. Rather it falls under Division 3, 'Employment Relations,' which governs more general obligations of employers and employees to each other." *Id.* The court also noted that "to the degree that the wage and hour law exclusion is ambiguous as to § 2802, interpretive canons favor resolving the ambiguity against the insurer and in favor of coverage." *Id.*

Nonetheless, the *Kay* court decided § 2802 was a wage and hour law. The court considered the fact that "§ 2802 is frequently paired with the Division 2 sections listed above in actions against employers who allegedly underpay their employees; often such actions are described as 'wage and hour' actions by courts, without distinguishing the business expense claim." *Id.* at 1181–82. The court further decided that:

> The function of § 2802 parallels the function of the minimum wage and other wage and hour laws—they all prevent employers from offloading expenses onto their employees ... And similarly, the logic of the wage and hour exclusions applies to § 2802—employers should not

be able to obtain a windfall by forcing then insurers to reimburse their employees for the employer's expenses.

*Id.* at 1182.

In *Hanover*, the Court considered the same question: whether § 2802 is a wage and hour law and thus is covered by a wage and hour exclusion. In *Hanover*, the underlying case was a state court action in which the plaintiff, Hicks, sued a hair design academy alleging that students were required to purchase tools necessary to perform services for paying clients. *See Hanover*, 2016 WL 6698936 at *3. Hicks purchased a "kit" on the first day of school that included a mix of educational materials, such as a book on state board procedures and other books on hair design, and work tools, such as scissors, brushes, and combs. *Id.* The *Hanover* court expressly considered *Kay* and decided not to follow its holding. *Id.* at *4. The *Hanover* court was not persuaded by *Kay's* reasoning that since § 2802 was frequently paired with Division 2 laws and collectively referred to as "wage and hour" actions that § 2802 was definitively a wage and hour claim. *Id.* The *Hanover* court stated that:

> Though one purpose of § 2802 is to 'prevent employers from offloading expenses onto their employees,' that does not mean it is the only function it serves, so as to render it a wage and hour statute. For example, § 2802 also provides for indemnification for third-party suits. Under § 2802, an employer is required to defend or indemnify an employee who is sued by third persons for conduct in the course and scope of the employee's employment ... Taking this separate purpose into account, the Court finds that § 2802 is not a wage and hour law and in turn, not subject to the Wage and Hour Exclusion.

*Id.*

The *Hanover* court also considered the California State Court case *In re Work*

*Uniform Cases*, 133 Cal.App.4th 328, 34 Cal.Rptr.3d 635 (2005) (*"Work Uniform"*). In *Work Uniform*, various municipal employees sued their employers alleging that pursuant to § 2802 the employer was required to pay for mandated work uniforms. *Id.* at 332, 34 Cal.Rptr.3d 635. In deciding the issue, the court first had to decide whether such a claim conflicts with the county's power to set wages of public employees. *Id.* at 336–37, 34 Cal.Rptr.3d 635. The Court considered a number of prior state court cases that found payment for employee uniforms is a component of employee compensation. *Id.* at 337–38, 34 Cal. Rptr.3d 635 (citing *Department of Industrial Relations v. UI Video Stores, Inc.*, 55 Cal.App.4th 1084, 64 Cal.Rptr.2d 457 (1997); *United Air Lines, Inc. v. Industrial Welfare Com.*, 211 Cal.App.2d 729, 28 Cal.Rptr. 238 (1963); and *Ventura County Deputy Sheriffs' Assn. v. Board of Retirement*, 16 Cal.4th 483, 66 Cal.Rptr.2d 304, 940 P.2d 891 (1997)). Relying on these cases, the *Work Uniform* court held that "payment to employees for work uniforms is a part of the employees' compensation and should be considered like any other payment of wages, compensation or benefits." *Work Uniform*, 133 Cal.App.4th. at 338, 34 Cal.Rptr.3d 635.

The *Hanover* court did not believe *Work Uniform* was dispositive on the issue of whether § 2802 is a wage and hour law. Instead, the *Hanover* court said *Work Uniform's* holding was narrowed to payments specifically for uniforms. *Hanover*, 2016 WL 6698936 at *4. The *Hanover* court also stated:

> Even assuming that under Work Uniform, the claim for reimbursement of the tools constitutes a wage claim ... It is unclear whether the books were exclusively used to perform services for Defendant's clients. Thus, there is a possibility that reimbursement for the books would not be considered compensations

and fall outside the Wage and Hour Exclusions.

*Id.*

The Court agrees with *Hanover* that the explicit holding in *Work Uniform* was narrow. However, the Court finds the *Work Uniform* rationale applies equally to all § 2802 reimbursements claims. The *Work Uniform* court relied on language in other cases that are equally applicable to any business expenditure in which the employee seeks reimbursement. For example, the *Work Uniform* court relied on *Ventura County Deputy Sheriffs' Assn. v. Board of Retirement* by stating: "The court concluded that the county's payment of an annual uniform maintenance allowance was compensation because it provided a benefit to the employee in that it substitutes for other attire that the employee would have to acquire absent the uniform allowance." *See Work Uniform*, 133 Cal.App.4th at 338, 34 Cal.Rptr.3d 635. Similarly, payment for any other business expenditure would benefit an employee the same way; i.e. the employee would have to acquire the item otherwise and pay for it themselves. Also, *Work Uniform* quoted *United Air Lines, Inc. v. Industrial Welfare Com.* in finding that the payment for uniforms concerns wages because, "The real effect of the order is to increase the [ ] employees' wages by the amount which in the absence of the regulation they would have to pay towards the cost of their uniforms." *Id.* Again, the same is true for any business expenditure. Finally, the *Work Uniform* court quoted *Department of Industrial Relations v. UI Video Stores, Inc.* in finding that, "[t]he term 'wages has been held to include money as well as other value given, including room, board and clothes. [Citation.]' '[T]he term 'wages' should be deemed to include not only the periodic monetary earnings of the employee but also the other benefits to which he is entitled as a part of his compensation. [Cita-

tions.]'" *Id.* at 337–38, 34 Cal.Rptr.3d 635 (internal citations omitted). Once again, this rationale applies equally to any reimbursement for a business expenditure.

Though if is true the *Work Uniform* court did not explicitly hold that § 2802 is a "wage and hour law"—it did not consider the question and such a holding was not necessary for its ruling—the Court finds that if a California court were to consider this question, in light of *Work Uniform* and the cases it relied on, it would find that § 2802 is a "wage and hour" law for purposes of the insurance exclusion. Further, the distinction made in *Hanover* between work related expenses and educational expenses is inapplicable to the Robles Lawsuit. Thus, the Court finds that the Robles' § 2802 claim falls squarely under the Wage and Hour Exclusion.

### B. Whether the Robles Lawsuit had the Potential for Coverage due a Potential Misrepresentation Claim

 Since all explicit claims in the Robles Lawsuit fall under the Wage and Hour Exclusion, CCIC's duty to defend would only be triggered if the facts alleged could have proven other covered acts, even if the cause of action was not explicitly alleged. *See Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, n. 15, 54 Cal.Rptr. 104, 419 P.2d 168 (1966) (finding a duty to defend when "the *facts* alleged do fairly apprise the insurer that plaintiff is suing the insured upon an occurrence which, if his allegations are true, gives rise to liability of insurer to insured under the terms of the policy" (internal citations omitted) (emphasis in original)). However, the insured " 'may not speculate about unpled third party claims to manufacture coverage.' " *Castlepoint Nat'l Ins. Co. v. Weather Masters Waterproofing, Inc.*, No. CV1306137MMMFFMX, 2014 WL 12567166, at *7 (C.D. Cal. June 2, 2014) (citing *Michaelian v. State Comp. Ins.*

*Fund*, 50 Cal.App.4th 1093, 1106, 58 Cal. Rptr.2d 133 (1996)).

Here, Phase II argues that the facts alleged in the Robles Lawsuit triggered the policy coverage for misrepresentation. Essentially, the argument is premised on the fact that the later Mendoza Lawsuit had explicitly stated causes of action for negligence and intentional misrepresentation—which CCIC admits are covered by the policy—and that therefore the same allegations must have occurred in the Robles Lawsuit as well. Specifically, the Mendoza Lawsuit alleged explicit misrepresentations made by Phase II to induce the Mendoza plaintiffs to accept the job. These misrepresentations included the condition of the trucks, the number of jobs and income drivers would receive, and the ability to work for other companies. The Robles Lawsuit contained no such allegations. The Robles plaintiffs did not allege that Phase II made any statements that misrepresented the nature of the work or that the Robles plaintiffs relied on any misrepresentations in accepting the job. Regardless, Phase II believes there is certain language in the Robles demand letter that may touch upon similar allegations. For example, Phase II argues the following language from the Robles demand letter should have triggered a duty to defend based on misrepresentation:

> **Phase II controls which driver goes to which client** and determines when the driver is to report to that client and determines when the driver is to report to that client [sic].... The drivers receive instructions from Phase II dispatchers, and are given work schedules by Phase II.... The insurance, [sic] plates and permits are under Phase II's name only and the truck is marked as a Phase II vehicle with painted markings on the doors. [ ] Further, **even if Mr. Robles signed an agreement that he was an independent contractor** that

would not change his status as an employee.

Dkt. 42 at 5 (emphasis added in Phase II's brief).[3]

Phase II's argument is completely backwards in time. Reading the Robles Demand or Complaint in 2012, there is no reason CCIC would believe there is a potential for a misrepresentation claim. There is simply no factual allegations of misrepresentations at all.[4] Phase II seems to believe that the above quoted language shows that Phase II's "representations to drivers in Robles and Mendoza were the same representations." This might be true, and Phase II's argument might have been well taken if the Mendoza case came first and the Robles case second. As it stands, however, there is not a single allegation in the Robles demand letter or Robles Lawsuit that Phase II committed any misrepresentations. CCIC, scrutinizing the Robles material years before any misrepresentation claims arose in Mendoza, would have no reason to inquire further.

 If anything, Phase II may have a compelling argument that the Robles plaintiffs actually suffered more injuries than they alleged. However, *Gray* and its progeny cannot be extended so far as to trigger the duty to defend anytime a plaintiff was in-fact injured through a covered wrongful act, even if they never plead the underlying facts of the injury. According to *Gray*, the plaintiff must actually plead "*facts* [that] fairly apprise the insurer that plaintiff is suing the insured upon an occurrence which, if his allegations are true, gives rise to liability of insurer to insured

under the terms of the policy." *See Gray*, 65 Cal.2d at n. 15, 54 Cal.Rptr. 104, 419 P.2d 168 (internal citations omitted) (emphasis in original). It is not the insurance company's job to discover these facts for the plaintiffs when the plaintiffs themselves fail to allege them. The Robles plaintiffs failed to allege any facts that could have given rise to any potential misrepresentation claim. CCIC had no reason to believe such facts might exist until years later, when the Mendoza action was filed. Thus. CCIC had no duty to defend the Robles lawsuit until the Mendoza action was filed, at which time CCIC did provide coverage under the Related Claims provision.

### C. Whether CCIC had a Duty to Indemnify the Robles Settlement

 CCIC covered the Robles settlement under a reservation of rights. It is well settled California law that if an insurer defends and indemnifies a lawsuit it may reserve the right to assert a noncoverage defense and seek reimbursement from the insured. *See Blue. Ridge. Ins. Co. v. Jacobsen*, 25 Cal.4th 489, 497, 106 Cal. Rptr.2d 535, 22 P.3d 313 (2001); *see also Gray*, 65 Cal.2d at 279, 54 Cal.Rptr. 104, 419 P.2d 168 ("[I]f the insurer adequately reserves its right to assert the noncoverage defense later, it will not be bound by the judgment."). There is no dispute that CCIC adequately and timely reserved its right when deciding to defend the Robles Lawsuit. The parties dispute whether the payout for the Robles settlement went towards covered claims, or uncovered claims.

---

**3.** Phase II also points to the following language from the Robles complaint: "[Phase II] intentionally misclassified Plaintiff and other hourly employees as 'independent contractors' to avoid paying wages and providing benefits ..." *See* dkt. 26–1 at 12.

**4.** A "misclassification", such as misclassifying an employee as an independent contractor, is

not a covered wrongful act under the policy. Phase II seems to presume, but does not explicitly argue, that a "misclassification" and "misrepresentation" are synonymous. To hold as such, however, would contradict the purpose of the wage and Hour Exclusion since such wage and hour cases are often brought on a theory of misclassification.

■ Here, CCIC argues that there was never a covered cause of action in the Robles Lawsuit, and thus there was no cause of action that would trigger the duty to indemnify. The Court agrees.[5] All the causes of action fell under the Wage and Hour Exclusion. Under California law, the insurer's duty to indemnify depends on how the underlying plaintiff framed its theories and styled its complaint. *See Devin v. United Servs. Auto. Assn.*, 6 Cal. App.4th 1149, 1157, 8 Cal.Rptr.2d 263 (1992) (discussing difference between duty to defend and duty to indemnify). In other words, the duty to indemnify does not trigger from the mere "potential for the third party to assert a covered claim." *Id.* If a settlement includes covered and uncovered claims, the insured has the initial burden to make a *prima facie* showing that the settlement related to covered claims. *Raychem Corp. v. Federal Ins. Co.*, 853 F.Supp. 1170, 1176 (N.D. Cal. 1994). However, the Robles Lawsuit included no covered claims at all and Phase II does not cite any law that a duty to indemnify can be triggered through settlement when there are no covered claims alleged in the pleadings.

■ Even the settlement discussions involved a mixture of covered and noncovered claims, it would still be Phase II's burden to show the settlement payment went to covered claims. *See id.* They fail to meet this burden. Though the Robles settlement allegedly allocated the payout to covered claims, such as misrepresentation, retaliation, and negligence, none of those claims were supported by the pleadings.[6]

"It is elementary that a party cannot recover on a cause of action not in the complaint." *Griffin Dewatering Corp. v. N. Ins. Co. of N.Y.*, 176 Cal.App.4th 172, 179, 97 Cal.Rptr.3d 568 (2009). Thus, the Robles plaintiffs could not recover on these unpled and factually unsupported claims. Further, even with the language allocated the settlement to covered claims, CCIC is not bound by the clearly strategic settlement allocation between the Robles plaintiffs and Phase II. *See Slottow v. Am. Cas. Co. of Reading, Pennsylvania*, 10 F.3d 1355, 1359 (9th Cir. 1993) (viewing strategic settlement allocation with "considerable suspicion" and finding that insurance company is not bound by the parties' self-serving allocations). Since the settlement payout must have gone towards the actual claims alleged, and not illusory and unpled claims, and since all claims alleged were covered by the Wage and Hour Exclusion, this Court GRANTS summary judgment in favor of CCIC on this issue. CCIC had no duty to indemnify the Robles settlement.

## V. CONCLUSION

For the foregoing reasons, this Court GRANTS CCIC's motion for summary judgment in its entirety and DENIES Phase II's motion for summary judgment in its entirety. CCIC had no duty to defend the Robles action prior to the filing of the Mendoza lawsuit and that CCIC is entitled to reimbursement for funds paid towards the Robles Lawsuit. The prevail-

---

5. Phase II premises its entire argument that CCIC properly indemnified the Robles Lawsuit on the assumption that covered claims existed. Since this assumption is false, Phase II provides no true opposition on this issue.

6. Further, even when the Robles plaintiffs attempted to amend the complaint, on January

5, 2014, they wanted to add *another* Wage and Hour claim: violation of Labor Code § 226.8 (penalties for willful misclassification). This is further evidence that only excluded claims were at issue at all times during the Robles Lawsuit.

ing party shall submit a proposed judgment consistent with this order.