Filed 8/27/19  Modified and Certified for Pub. 9/20/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SOUTHERN CALIFORNIA PIZZA CO., LLC, | |
| Plaintiff and Appellant, | G056243 |
| v. | (Super. Ct. No. 30-2017-00940309) |
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NUMBER 11EPL-20208, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Kim G. Dunning, Judge.  Reversed and remanded with directions.

Pasich, Shaun H. Crosner and Michael S. Gehrt for Plaintiff and Appellant.

Troutman Sanders, Terrence R. McInnis and Ross Smith for Defendant and Respondent.

This insurance coverage lawsuit calls on us to interpret the scope of an employment practices liability insurance policy (Policy) exclusion relating to "wage and

hour or overtime law(s)."  In the context of a demurrer by defendant Certain Underwriters at Lloyd's, London Subscribing To Policy Number 11EPL-20208, the trial court interpreted the term to encompass all provisions of the Labor Code.[1]  This led the court to sustain defendant's demurrer, concluding all causes of action in the underlying employment lawsuit against plaintiff Southern California Pizza Company, LLC, fell within the scope of the Policy exclusion.

Using well-established insurance policy interpretation principles, we find the wage and hour law language of the exclusion is more narrow in scope than stated by the trial court.  It concerns laws regarding duration worked and/or remuneration received in exchange for work.  Applying that interpretation, and taking into account the Policy's general coverage, we conclude many of the disputed underlying lawsuit claims are potentially subject to coverage.  Thus, the trial court erred in sustaining defendant's demurrer and we reverse the judgment.

## FACTS

Plaintiff owns and operates over 250 Pizza Hut and Wing Street restaurants. Defendant provided to plaintiff an employment practices liability insurance policy, which covered certain losses arising from specified employment-related claims brought against plaintiff.

The Policy's basic liability coverage states as follows:  "We will pay **Loss** amounts that the Insured is legally obligated to pay on account of a **Claim** for an Employment Event first made by a **Claimant** during the **Policy Period** or any applicable Reporting Period . . . ."  "Loss" is defined to include, inter alia, defense costs. "Employment Event" is defined to mean "actual or alleged acts of **Discrimination, Harassment,** and/or **Inappropriate Employment Conduct** by an Insured against an **Employee**, former **Employee** or applicant for employment."

---

[1]  All further statutory references are to the Labor Code.

2

The last of the specified types of acts, "Inappropriate Employment Conduct," is expressed as including, in relevant part: (1) "any actual or alleged employment related misrepresentation to an **Employee** or applicant for employment"; (2) "any failure to adopt, implement or enforce employment related policies or procedures"; or (3) "any other employment related workplace tort."

An endorsement to the Policy adds an additional provision to its liability "Exclusions" section, which the parties refer to as the wage and hour exclusion. It reads as follows: "This Policy does not cover any **Loss** resulting from any **Claim** based upon, arising out of, directly or indirectly connected or related to, or in any way alleging violation(s) of any foreign, federal, state, or local, wage and hour or overtime law(s), including, without limitation, the Fair Labor Standards Act; however, we will pay **Defense Costs** up to, but in no event greater than $250,000 for any such **Claim(s)**, without any liability to us to pay such sums that any Insured shall become legally obligated to pay. . . . The wage, hour and overtime coverage provided by this endorsement applies only to **Claims** which seek wages earned solely and exclusively after the retroactive date listed in the Schedule of this endorsement; but where the wage, hour or overtime **Claim** was first made against you during the Policy Period."

After being named a defendant in a putative class action lawsuit alleging violations of a variety of Labor Code provisions (the underlying lawsuit), plaintiff sought coverage under the Policy. Defendant largely denied coverage, stating that the alleged violations fell within the wage and hour exclusion. It, however, provided $250,000 in defense cost coverage as specified in the exclusion.

Believing it was entitled to more coverage, plaintiff filed the instant suit alleging breach of contract and tortious breach of the implied covenant of good faith and fair dealing. It sought compensatory damages, punitive damages, and declaratory relief.

Defendant demurred to the complaint, asserting none of the causes of action in the underlying lawsuit were covered "Employment Event" claims, as defined in the

3

Policy, and, alternatively, they all fell within the Policy's wage and hour exclusion. Though plaintiff conceded some of the claims fell within the exclusion, it argued other claims were subject to coverage based on its more narrow interpretation of the exclusion language.

After a hearing, the trial court adopted defendant's reasoning as its own. Because plaintiff indicated it would not seek leave to amend the complaint, the court sustained defendant's demurrer without leave to amend and entered a corresponding judgment. Plaintiff timely appealed.[2]

## DISCUSSION

Plaintiff contends the trial court erred in sustaining defendant's demurrer because some of the claims in the underlying lawsuit are covered by the Policy and the wage and hour exclusion is more narrow than interpreted by the court. In the context of the latter argument, it focuses on two particular sets of allegations in the underlying lawsuit which it asserts are outside the scope of the exclusion—one set alleging plaintiff failed to reimburse its delivery drivers for mileage expenses, certain work travel-related costs and cell phone expenses (§§ 2800, 2802), and the other set alleging plaintiff failed to obey the statutory requirement that certain information be included on each wage statement (§ 226). We agree the wage and hour exclusion must be interpreted more narrowly than was done by the trial court, and based on that we conclude some, but not all, of the disputed claims are potentially covered by the Policy.

*A. Insurer's duty to defend and general principles of insurance contract interpretation*

---

[2] After oral argument and submission of the case, defendant filed a letter notifying this court of new case law authority it believes is relevant to the disputed issues on appeal. (Cal. Rules of Court, rule 8.254.) Thereafter, plaintiff requested we allow supplemental briefing concerning the new authority. We deny plaintiff's request.

"'[A] liability insurer owes a broad duty to defend its insured against claims that create a *potential* for indemnity.'" (*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 295 (*Montrose*), italics added.) Thus, "'the duty to defend is broader than the duty to indemnify[.] [A]n insurer may owe a duty to defend its insured in an action in which no damages ultimately are awarded[,]'" or in an action in which it is only later "shown that there is *no* potential for coverage[.]" (*Ibid*.) "[I]n a 'mixed' action, in which some of the claims are at least potentially covered and the others are not, the insurer has a duty to defend as to the claims that are at least potentially covered, having been paid premiums by the insured therefor, but does not have a duty to defend as to those that are not, not having been paid therefor." (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 47-48.)

"'The determination whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the [relevant] complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy.'" (*Montrose, supra*, 6 Cal.4th at p. 295.)

"The principles governing the interpretation of insurance policies in California are well settled. 'Our goal in construing insurance contracts, as with contracts generally, is to give effect to the parties' mutual intentions. [Citations.] "If contractual language is clear and explicit, it governs." [Citations.] If the terms are ambiguous [i.e., susceptible of more than one reasonable interpretation], we interpret them to protect "'the objectively reasonable expectations of the insured.'" [Citation.] Only if these rules do not resolve a claimed ambiguity do we resort to the rule that ambiguities are to be resolved against the insurer. [Citation.]' [Citation.] The 'tie-breaker' rule of construction against the insurer stems from the recognition that the insurer generally drafted the policy and received premiums to provide the agreed protection. [Citations.]

"To further ensure that coverage conforms fully to the objectively reasonable expectations of the insured, the corollary rule of interpretation has developed that, in cases of ambiguity, basic coverage provisions are construed broadly in favor of affording protection, but clauses setting forth specific exclusions from coverage are interpreted narrowly against the insurer.  The insured has the burden of establishing that a claim, unless specifically excluded, is within basic coverage, while the insurer has the burden of establishing that a specific exclusion applies.  [Citations.]" (*Minkler v. Safeco Ins. Co. of America* (2010) 49 Cal.4th 315, 321-322 (*Minkler*).)

"The existence of a material ambiguity in the terms of an insurance policy may not, of course, be determined in the abstract, or in isolation.  The policy must be examined as a whole, and in context, to determine whether an ambiguity exists. [Citations.]" (*Minkler, supra*, 49 Cal.4th at p. 322.)  When we engage in that process, we generally interpret a policy's provisions in their """"ordinary and popular sense"""" (*MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 648 (*MacKinnon*)), that is """""as """"a laymen would read [them] and not as [they] might be analyzed by an attorney or an insurance expert""""" (*Lebas Fashion Imports of USA Inc. v. ITT Hartford Ins. Group* (1996) 50 Cal.App.4th 548, 559 (*Lebas*)).  We do otherwise only if the terms are """"used by the parties in a technical sense or a special meaning is given to them by usage[.]""""" (*MacKinnon,* at p. 648.)

B. *Wage and hour laws*

The primary question before us is whether the specific factual allegations in the underlying lawsuit evidence claims that "aris[e] out of, [are] directly or indirectly connected or related to, or in any way alleg[e] violation(s) of any . . . state . . . wage and hour or overtime law(s)[.]"  This necessarily requires us to interpret the meaning of "wage and hour . . . law(s)[,]"[3] a term which the Policy does not define.

---

[3] Neither party contends that "overtime" laws are pertinent to the issues in this appeal.

Because neither party contends the language at issue has a special or technical meaning, we begin with the ordinary definition of the word "wage." One dictionary defines it as "a payment usually of money for labor or services usually according to contract and on an hourly, daily, or piecework basis." (Merriam-Webster's Online Dict. (2019) <http://www.merriam-webster.com/dictionary> [as of Aug. 26, 2019] "wage," definition No. 1; *Jordan v. Allstate Ins. Co.* (2004) 116 Cal.App.4th 1206, 1216 ["It is well settled that in order to construe words in an insurance policy in their 'ordinary and popular sense,' a court may resort to a dictionary"].) Another defines it as "[a] payment to a person for service rendered." (Oxford English Dictionary Online (2019) <http://www.oed.com> [as of Aug. 26, 2019].) Synonyms of the word include "payment," "salary," and "stipend." (Merriam-Webster's Online Thesaurus (2019) <http://www.merriam-webster.com/dictionary> [as of Aug. 26, 2019] "wage.")

Common among these definitions is the notion that wages are paid in exchange for services rendered. This ordinary meaning is consistent with that ascribed to the term in the legal context. For example, the Labor Code defines "wages" as "all amounts *for labor performed* by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other methods of calculation." (§ 200, subd. (a), italics added.) It includes all "benefits to which employees are entitled as a part of compensation, vacation and sick pay, and deferred compensation such as pension and retirement benefits." (*Pacific Caisson & Shoring, Inc. v. Bernard Bros. Inc.* (2015) 236 Cal.App.4th 1246, 1254.)

Turning to the term "hour," it is a plain reference to a duration of time. This the parties do not debate.

Thus, using the ordinary meanings of the words, the phrase "wage and hour . . . law(s)" refers to laws concerning duration worked and/or remuneration received in exchange for work.

Plaintiff contends the phrase should be read in context with the surrounding sentences, and doing so yields an even more narrow meaning—that the excluded claims are only those which allege a wage, hour or overtime law violation, *and* which seek wages as relief. While we agree surrounding terms in the Policy may aid in determining the parties' mutual intentions, we disagree with plaintiff's urged interpretation.

After referring to the "wage and hour and overtime law(s)" related claims excluded from coverage, the endorsement states: "[H]owever, we will pay **Defense Costs** up to, but in no event greater than $250,000 for any such **Claim(s)**, without any liability to us to pay such sums that any Insured shall become legally obligated to pay. . . . The wage, hour and overtime coverage provided by this endorsement applies only to **Claims** which seek wages earned solely and exclusively after the retroactive date listed in the Schedule of this endorsement; but where the wage, hour or overtime **Claim** was first made against you during the Policy Period" (the wage and hour exclusion).

Contrary to plaintiff's assertion, the reference to claims "which seek wages" is a clarification and refinement of the "coverage provided by this endorsement"—i.e., the limited defense coverage. It does not expressly or implicitly concern the matters excluded from coverage, which is our focus.

Having determined the scope of the wage and hour exclusion, we now turn to the claims alleged in the underlying lawsuit for which insurance coverage is disputed.

*C. Claim alleging failure to include all required information on wage statements*

The underlying lawsuit alleged plaintiff, in violation of section 226, failed to include all required information on wage statements provided to its employees. It claimed the wage statements did not "accurately list the total hours worked," failed to include defendant's "complete name and address," did not "state the inclusive dates of the period for which the employee [was] being paid," and failed "to state all applicable hourly rates in effect during pay periods."

8

Section 226 falls within a chapter titled "Payment of Wages." (Div. 2, pt. 1, ch.1.) It lists nine items which employers generally must provide in writing to employees on a semimonthly basis or each time wages are paid. They include the gross wages earned, total hours worked, all deductions, any applicable hourly rates, inclusive dates for which the employee is being paid, and the name and address of the legal entity that is the employer. (§ 226, subd. (a).) The statute also details the recourse available to an employee who believes his or her employer has not complied. (§ 226, subds. (e), (f) & (h).) The Legislature enacted the section "[a]s part of a comprehensive statutory scheme governing the payment of wages." (*Heritage Residential Care, Inc. v. Division of Labor Standards Enforcement* (2011) 192 Cal.App.4th 75, 80.)

All of these characteristics point toward the statute being a quintessential wage law, and we are not persuaded otherwise by the federal district court cases which plaintiff cites.

Taking the opposite position, plaintiff underscores its belief that "section 226 does not allow for an award of 'wages[.]'" Even if accurate, a point on which we express no opinion, that the remedy for violating the statute is something other than payment of wages does not preclude the conclusion that it is a wage law.

Because section 226 is a "wage and hour law," the cause of action in the underlying lawsuit alleging a violation thereof fell within the scope of the Policy's wage and hour exclusion. The trial court did not err by so concluding.

D. *Claim alleging failure to reimburse business-related expenses*

The underlying lawsuit also alleged plaintiff failed to fully reimburse its delivery drivers for necessary business-related expenses they incurred while doing their job, including travel for required training, mileage driven for deliveries and cell phone usage. Among the relief requested was reimbursement due on those expenses, plus interest, pursuant to sections 2800 and 2802. Plaintiff contends the trial court erred in

9

concluding such a claim falls outside the scope of the Policy's general coverage, or alternatively, within the scope of the wage and hour exclusion. We agree.

We begin with the wage and hour exclusion. Both sections 2800 and 2802 require an employer to indemnify its employee for certain losses or expenditures under specified circumstances. Section 2800 states: "An employer shall in all cases indemnify his employee for losses caused by the employer's want of ordinary care." Section 2802 provides, in relevant part: "An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful." (§ 2802, subd. (a).)

Neither statute mentions wages or hours, nor do they appear in the parts of the Labor Code titled "compensation" or "working hours." (See Div. 2, pts. 1 & 2 [§§ 200-890].) While not determinative of the question before us, this observation supports the notion that one would not expect them to be considered wage or hour laws in the absence of an express indication otherwise.

Lending further credence is the function of, and the purpose underlying, each statute. Disbursements for losses and work-related expenditures are not payments made in exchange for labor or services. (*Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 572 (*Gattuso*) [explaining there is "a valid and important distinction between wages (as payment for labor performed) and business expense reimbursement"].) The former protects employees from an employer's lack of reasonable care and diligence (*Devens v. Goldberg* (1948) 33 Cal.2d 173, 177), as well as ensures employers are "bear[ing] all of the costs inherent in conducting [their] business[es]" (*In re Acknowledgement Cases* (2015) 239 Cal.App.4th 1498, 1506). And the latter "'prevent[s] employers from passing their operating expenses on to their employees.'"

10

(*Gattuso,* at p. 562; see also *Grissom v. Vons Companies, Inc.* (1991) 1 Cal.App.4th 52, 59.)

Given section 2802's language, function and purpose, it is unsurprising our Supreme Court previously characterized claims seeking reimbursement of business expenses as "nonwage" claims. (*Smith v. Rae-Venter Law Group* (2002) 29 Cal.4th 345, 353, superseded by statute on other grounds as stated in *Sampson v. Parking Service 2000 Com. Inc.* (2004) 117 Cal.App.4th 212, 220.)

The parties bring our attention to three federal district court cases which have considered whether section 2802 is a "wage and hour law" in the context of insurance policy exclusions similar to the one in this case. The two cases defendant cites, one of which the trial court relied on, answered the question in the affirmative. (*Phase II Transportation, Inc. v. Carolina Casualty Ins. Co.* (C.D.Cal. 2017) 228 F.Supp.3d 999, 1006 (*Phase II*); *Admiral Ins. Co. v. Kay Automotive Distributors, Inc.* (C.D.Cal. 2015) 82 F.Supp.3d 1175, 1181-1182 (*Admiral*).) The case plaintiff relies on came to the opposite conclusion. (*Hanover Ins. Co. v. Poway Academy of Hair Design, Inc.* (S.D.Cal., Nov. 14, 2016, No. 15cv536) 2016 WL 6698936 (*Hanover*).)

We are not bound by those federal decisions, nor do we find them persuasive. *Admiral* concluded section 2802 is a "wage and hour law" because (1) it "is frequently paired with [minimum wage and overtime claims] in actions against employers who allegedly underpay their employees"; (2) courts often describe such actions as "wage and hour" actions without distinguishing section 2802 business expense claim; and (3) its function parallels that of the minimum wage and other wage laws, "prevent[ing] employers from offloading expenses onto their employees." (*Admiral, supra*, 82 F.Supp.3d at pp. 1181-1182.) But *Admiral* never addressed the ordinary meaning of the term "wage and hour law," a key first step in the insurance policy interpretation analysis. (See *MacKinnon, supra*, 31 Cal.4th at p. 648; *Lebas, supra*, 50 Cal.App.4th at p. 559.)

11

*Phase II* likewise skipped the first analytical step and instead used language in *In re Work Uniform Cases* (2005) 133 Cal.App.4th 328 (*Work Uniform*), to opine what a California court would conclude if it were to consider the issue. (*Phase II, supra*, 228 F.Supp.3d at pp. 1005-1006.) And *Work Uniform* is inapposite. The sole issue before the court was "whether section 2802 require[d] the public entity employers in [that] case to pay for the entire cost of purchase and maintenance of uniforms required for work." (*Work Uniform,* at p. 334.) To answer the question, the court addressed whether reimbursed expenses under section 2802 were "compensation" for purposes of determining whether the statute conflicted with a county's constitutional authority to provide for the compensation of its public employees. This is entirely different than whether section 2802 is a "wage and hour law," as that term is used in the subject insurance exclusion.

Lastly, although *Hanover* came to the same conclusion we do here, it did so without analyzing the intended meaning of the insurance exclusion language and by relying on *Work Uniform.* And, ultimately, its holding was based in part on the lack of California case law, meaning there was "at least a real possibility that [a claim under section 2802] is not [subject to the] exclu[sion] and therefore covered." (*Hanover, supra*, 2016 WL 6698936 .)

For these reasons, we hold the claim in the underlying lawsuit brought pursuant to sections 2800 and 2802 falls outside the scope of the wage and hour exclusion.

Our inquiry does not end there. That the business expense reimbursement claim is not subject to the exclusion begs the question of whether the claim potentially falls within the Policy's coverage in the first instance. On this point the parties also disagree.

The business expense cause of action in the underlying lawsuit alleged the plaintiff was not reimbursed, or at least not adequately reimbursed, for expenses related

12

to mileage driven, cell phone usage and training.  Specifically, the complaint stated:  (1) "defendant[] had, and continue[s] to have, a policy of not reimbursing employees for actual mileage expenses necessarily incurred for the performance of their job duties"; (2) "[d]efendant[] failed to reimburse [the employees] for their cell phone expenses"; and (3) "[d]efendant[] failed to reimburse [the employees for] work related travel and mileage expenses they incurred traveling to [plaintiff's] mandatory training sessions."

Plaintiff contends the claim is covered because it alleges conduct which the Policy covers as "Inappropriate Employment Conduct."  The two categories of conduct listed in the Policy to which it directs our attention are the following:  (1) "any failure to adopt, implement, or enforce employment related policies or procedures"; and (2) "any other employment related workplace tort."

Taking the latter first, as we find it determinative of the issue, we agree the claim at issue likely qualifies as an employment-related workplace tort.  In the ordinary sense, "[a] tort is defined to be 'any wrong, not consisting in mere breach of contract, for which the law undertakes to give to the injured party some appropriate remedy against the wrongdoer.'"  (*Denning v. State* (1899) 123 Cal. 316, 323.)  Here, the wrong alleged (failure to reimburse business expenses) is not grounded in the breach of a contract, and the Legislature enacted a statute which gives the injured party (an employee) a remedy against the wrongdoer (an employer).

Our conclusion is supported by the fundamental aim of the relevant statutes.  "'"[T]ort law is primarily designed to vindicate 'social policy.'  [Citation.]"'"  (*Erlich v. Menezes* (1999) 21 Cal.4th 543, 551.)  Sections 2800 and 2802 are so designed—they vindicate the social policy that employees should not be bearing the financial burden of an employer's operating expenses, costs of doing business or failure to exercise due care.  (*Gattuso, supra*, 42 Cal.4th at p. 562; *Devens, supra*, 33 Cal.2d at p. 177; *In re Acknowledgement Cases, supra*, 239 Cal.App.4th at p. 1506.)

13

Defendant contends the claim alleges a statutory violation, not a tort. But "'the Legislature possesses a broad authority . . . to establish . . . tort causes of action.'" (*Bihun v. AT&T Information Systems, Inc.* (1993) 13 Cal.App.4th 976, 1002; see also *Cory v. Shierloh* (1981) 29 Cal.3d 430, 439 ["It is well settled that the Legislature possesses a broad authority both to establish and to abolish tort causes of action"], superseded by statute on other grounds as stated in *Ennabe v. Manosa* (2014) 58 Cal.4th 697, 708-709.) It did so here. Section 2800 speaks of "losses caused by the employer's want of ordinary care." This is classic terminology used to describe negligence—a classic tort. (See *Burns v. Neiman Marcus Group, Inc.* (2009) 173 Cal.App.4th 479, 487.) And section 2802 creates a statutory duty for employers and a specific remedy for violation of that duty. A violation of a statutory duty owed to another may be a tort. (See *Laczko v. Jules Meyers, Inc.* (1969) 276 Cal.App.2d 293, 295.)

Even if we were to find the Policy language reasonably susceptible to defendant's urged meaning, it would at most mean the terminology used is ambiguous. Presented with such a situation, we would nevertheless conclude "coverage is consistent with [plaintiff's] objectively reasonable expectations" under the circumstances. (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1265.)

As a final backstop, and for the first time on appeal, defendant contends sustaining the demurrer as to the business expense claim was proper because the expenses themselves are not covered "losses," as defined in the Policy. It cites the Policy's language which specifies defendant "will pay **Loss** amounts that [plaintiff] is legally obligated to pay *on account of* a **Claim** for an Employment Event . . . ." So its argument goes, business expense reimbursements are not amounts which must be paid "'on account of' a claim," but rather amounts to be paid due to a statutory mandate.

However, whether the reimbursement amounts are covered losses is neither here nor there. Plaintiff's focus is defendant's duty to defend. The duty to defend is broader than the duty to indemnify. (*Montrose, supra*, 6 Cal.4th at p. 295.) And

14

defendant, for good reason, does not argue the disputed defense costs are not "losses." They are expressly included in the Policy's definition of "loss," and by their very nature, they necessarily are amounts paid "on account of a Claim."

As noted above, the $250,000 defense costs cap relied on by defendant applies only to excluded wage and hour claims. In light of our conclusions concerning potential coverage and inapplicability of the wage and hour exclusion to the business expense reimbursement cause of action in the underlying lawsuit, it has no application in this case. And from all of this, it follows that defendant's demurrer should have been overruled. (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 119 ["A demurrer must dispose of an entire cause of action to be sustained"].)

E. *Other allegations in the underling lawsuit*

Plaintiff also argues other causes of action alleged in the underlying lawsuit are potentially covered by the Policy and not subject to the wage and hour exclusion. It refers us to the following causes of action: failure to timely pay earned wages upon discharge (§ 201); failure to timely pay earned wages upon resignation (§ 202); unfair business practices (§ 17200); and recovery of civil penalties under a private attorney general theory (§ 2698 et seq.). Additionally, although plaintiff acknowledges the complaint did not include a misrepresentation cause of action, it identifies allegations which it construes as alleging misrepresentation, contending they triggered Policy coverage too.

Because the causes of action seeking relief under section 17200 and the Private Attorneys General Act are derivative claims based, in part, on defendant's alleged failure to reimburse business-related expenses, we agree they are, to that extent, potentially within the scope of the Policy and not excluded.

The other identified claims and allegations are different. Sections 201 and 202 are wage and hour laws, as we have interpreted that Policy term, and thus the wage and hour exclusion applies to them. The purported unpled misrepresentation claim would

15

likewise fall within the exclusion. All of the allegations highlighted by plaintiff allege violations of state wage and hour laws (e.g. "falsely represented . . . they were properly denied wages"), so the unpled claim would be "directly or indirectly connected or related to" those purported violations. The trial court sustained defendant's demurrer to this cause of action due to its lack of potential coverage determination. In light of our conclusion the business expense reimbursement aspect of the underlying lawsuit, as well as section 17200 and the private attorney general claims based thereon, was potentially subject to coverage, sustaining the demurrer as to plaintiff's bad faith claim was error.

## DISPOSITION

The judgment is reversed. On remand, the trial court shall vacate the order sustaining defendant's demurrer and enter a new order overruling it. Plaintiff is entitled to costs on appeal.


THOMPSON, J.

WE CONCUR:


FYBEL, ACTING P. J.


IKOLA, J.

16

Filed 9/20/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SOUTHERN CALIFORNIA PIZZA CO., LLC,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NUMBER 11EPL-20208,<br><br>    Defendant and Respondent. | G056243<br><br>(Super. Ct. No. 30-2017-00940309)<br><br>ORDER MODIFYING OPINION; GRANTING PUBLICATION AND DENYING PETITION FOR REHEARING; NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed on August 27, 2019, be modified as follows:

On page 14, in the first line of the third full paragraph, the words "and for the first time on appeal," are deleted so the sentence reads:

As a final backstop, defendant contends sustaining the demurrer as to the business expense claim was proper because the expenses themselves are not covered "losses," as defined in the Policy.

California Employment Law Council and California Trucking Association have requested that our opinion be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c).

The request for publication is GRANTED. The opinion is ordered published in the Official Reports.

The petition for rehearing is DENIED. This modification does not change the judgment.

THOMPSON, J.

WE CONCUR:

FYBEL, ACTING P. J.

IKOLA, J.

2