Filed 8/29/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| JOYCE FAYE ATLAS, | B335661 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 21STCV14481) |
| v. | |
| MIKE H. DAVIDYAN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Holly J. Fujie, Judge. Affirmed.

Law Offices of Jon H. Freis, Jon H. Freis; Law Offices of John T. Schreiber and John T. Schreiber for Defendant and Appellant.

Neighborhood Legal Services of Los Angeles County, David Pallack and Carolyn Barnes for Plaintiff and Respondent.

———————————————

## SUMMARY

Appellant Mike Davidyan was the defendant in a civil action in which plaintiff and respondent Joyce Atlas won a default judgment of over $1,100,000. The default judgment was entered as a termination sanction based on defendant's noncompliance with his obligations under the discovery statutes.

Plaintiff and defendant present sharply different characterizations of the facts of the underlying case. Plaintiff states that defendant was a "fraudster" who preyed on cash-strapped homeowners by deceiving them into signing over their property under the guise of providing a loan.[1]

Defendant claims that plaintiff was a drug user and seller who lived rent-free in his property for several years.[2] We need not resolve these cross-accusations.

Defendant represented himself in the trial court, and, as his appellate counsel admits, "[d]uring discovery this often meant he was his own worst enemy." Plaintiff filed a total of nine

---

[1] There is some basis for this accusation. After a hearing on October 26, 2021, the trial court denied defendant's motion to compel arbitration because "sufficient issues have been raised . . . regarding . . . potential fraud." The trial court later took judicial notice of a stipulated judgment agreed to by defendant's company in May 2017 in *Mulligan v. Worldwide Real Estate Development et al.* (BC613074), a case involving factual allegations similar to plaintiff's. Also, defendant's real estate broker's license was revoked in December 1998 due to dishonest conduct.

[2] This accusation originates in a deposition taken by defendant, a neighbor who had sued both plaintiff and defendant after being bitten by plaintiff's dog.

motions to compel discovery responses and for discovery sanctions. The trial court, in a series of orders issued between October 28, 2021, and July 10, 2023, initially declined to impose sanctions and gave defendant multiple extensions of time to respond; then issued several orders imposing monetary sanctions and setting compliance deadlines; then, finding that defendant's continued noncompliance was willful, imposed issue sanctions, and finally terminating sanctions.

Defendant appeals from the default judgment resulting from the terminating sanction. He argues that imposing this "doomsday" sanction was an abuse of discretion because his written discovery responses – while imperfect – were in substantial compliance, and that he had made "substantially justified" objections to deposition questions and interrogatories. He argues that the trial court used an incorrect legal standard in imposing sanctions.

Defendant also contends that, prior to the default prove-up hearing, he did not have proper notice of potential damages because plaintiff did not provide a statement of damages under section 425.11 of the Code of Civil Procedure; that the trial court erred in disregarding his payment of back taxes and allowing plaintiff to stay in the property in calculating damages; and erred in awarding emotional distress damages.

We find no merit in defendant's claims and affirm the judgment of the trial court in all respects.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. The Property Transaction

At the time of the trial, plaintiff was elderly and had significant mental and physical disabilities. She had lived in the same house for over 20 years and inherited her home after her

mother died in 2014.  She learned in 2016 that she owed over $10,000 in back taxes and the home would soon be subject to a tax sale.  In October 2016, plaintiff saw a flyer with information about helping homeowners keep their property, called the telephone number on the flyer, and spoke to defendant.

On October 10, 2016, plaintiff met with defendant at a coffee shop; as defendant had instructed, she brought to the meeting documents regarding her ownership of the home and gave these documents to him.  At this meeting, she signed papers conveying ownership of her home to defendant, including a purchase and sale agreement, release, and grant deed.  These papers did not provide for any monetary payment to plaintiff; the "purchase terms" stated that in exchange for title to the property, defendant agreed only to assume responsibility for all debts encumbering the property and pay all back taxes.[3]  On October 14, 2016, defendant paid the $10,596.62 in back taxes owed on the property.

Plaintiff alleges – and defendant denies – that she was misled into signing these documents and believed she was getting a loan from defendant, not conveying property to him.

On October 16, 2016, plaintiff met with defendant again, told him she no longer wanted to work with him, and took back the documents she had given him.  Plaintiff alleges that because defendant returned her documents and she never received a loan from defendant, she believed the transaction had been cancelled. She continued to live in the home.

In February 2021, more than four years after her two meetings with defendant, plaintiff received an eviction notice

---

[3]     The record does not indicate that there was a mortgage or other encumbrance on the property, aside from the tax lien.

4

from defendant.[4]  On March 1, 2021, the unlawful detainer court granted plaintiff's motion to set aside default and to quash any writ of execution, based on her declaration that defendant had obtained title to her property by fraud.

## 2.    The Litigation

On April 16, 2021, plaintiff filed a complaint alleging causes of action for fraud; undue influence; financial elder abuse; cancellation of the purchase and sale agreement, the release, and the grant deed; return of her real property; quiet title; and intentional infliction of emotional distress.  She sought orders cancelling the instruments purporting to transfer title to defendant and effectuating the return of title to her; general and special damages according to proof, but not less than $1,000,000; and attorney fees.

On August 6, 2021, defendant – who was self-represented – filed an answer to the complaint, denying all allegations.  Four days later, he filed a cross-complaint, and in August 2022, he filed the operative second amended cross-complaint.  Defendant's cross-complaint alleged that he had agreed to purchase the property and take over all debt associated with it; that plaintiff continued to live on the property for some time; that in 2018, he sent plaintiff a letter requesting that she start paying rent, and when he received no response, he attempted to visit the property but could not gain access due to the presence of a vicious dog.  Defendant alleged the property was severely unkempt and he

---

[4]    Plaintiff points out that the eviction notice was served soon after the running of the four-year statute of limitations on her causes of action arising out of the property sale, and defendant was aware of this statute of limitations because he referred to it during a hearing on October 16, 2021.

5

eventually resorted to filing an unlawful detainer action due to plaintiff's refusal to pay rent or leave the property and her failure to maintain the property. The cross-complaint alleged causes of action for breach of contract and promissory or equitable estoppel, and sought injunctive relief and damages for breach of the purchase contract and release agreement.

3. **The Discovery Dispute**

On October 4 and 5, 2021, plaintiff filed her first two motions to compel and for sanctions, alleging that defendant had failed to respond in a timely manner to plaintiff's requests for admissions and interrogatories, his untimely responses contained meritless objections and evasive and incomplete responses, and attempts to meet and confer had been unavailing. The court initially did not rule on these motions on October 28, 2021, giving defendant until November 24, 2021 to file further discovery responses. On December 7, 2021, the court granted the motions and imposed sanctions of $2,625, finding that defendant had not provided the further supplemental responses to plaintiff's first set of interrogatories and requests for admission that had been ordered.

On December 14, 2021, plaintiff filed another motion to compel, alleging that defendant had failed to respond to interrogatories despite several extensions of time and attempts to meet and confer. Defendant provided responses to interrogatories on January 31, 2022. Plaintiff filed a reply, arguing that her motion should still be granted due to defendant's late and inadequate responses. On February 18, 2022 the court issued a detailed order discussing the discovery issues, finding that defendant had "repeated[ly]" failed to respond to discovery requests "despite receiving several extensions that

6

afforded him extra time," and ordered defendant to submit supplemental responses and pay sanctions of $2,143.75.

On October 6, 2022 the court held another hearing regarding discovery; by this point plaintiff had filed five motions to compel. The court granted motions to compel defendant to provide further responses to interrogatories and document requests, and to compel answers to deposition questions; imposed sanctions of $3,550 (considerably less than the $11,465 plaintiff requested); and ordered defendant to appear for deposition on November 15, 2022.

On December 5, 2022, plaintiff filed a motion requesting terminating or issue sanctions, due to defendant's failure to appear for deposition, respond to interrogatories and document requests, and pay monetary sanctions, claiming that defendant had willfully refused to comply with discovery and used bad faith tactics. This motion was supported by a declaration by plaintiff's counsel detailing numerous attempts to obtain defendant's compliance with discovery requests. Defendant responded with a declaration stating that he had been ill and asking for more time, and later providing some supplemental responses to interrogatories.

At a hearing on January 3, 2023, the court noted that defendant still had not provided adequate or complete discovery responses or paid any sanctions. The court discussed the law of incremental sanctions but declined to impose terminating or issue sanctions. The court also noted defendant's "pattern of dilatory conduct" regarding his discovery obligations, imposed additional sanctions of $3,500, and ordered defendant to comply with its prior order of October 6, 2022, and to appear for his deposition on January 23, 2023.

On March 1, 2023, plaintiff filed another motion for terminating or issue sanctions, on the grounds that defendant again failed to appear for deposition on January 23, 2023, provided further discovery responses that were incomplete and inadequate, had not paid any of the court-ordered sanctions, and was acting in bad faith. Defendant opposed this motion on the grounds that he had made good-faith efforts to comply with discovery and that plaintiff's discovery requests were excessive and redundant.

On March 28, 2023, the trial court granted plaintiff's motion in part, imposing issue sanctions. The court found that defendant had engaged in a "pattern of dilatory conduct" and had "a pattern of attempting to provide any semblance of discovery responses only after Plaintiff has already filed motions to compel or motions for sanctions." The court found that defendant's pro per status did not explain or excuse his noncompliance with discovery, because "he has engaged in substantial motion practice that demonstrates an understanding of the law and an ability to convey legal arguments in writing. . . . This pattern of conduct leads the Court to find that Defendant's failure to comply with the Court's orders is willful." The court ruled that "the following facts shall be established in future proceedings: [¶] . . . that . . . Defendant told Plaintiff that those documents she was signing were documents to obtain a loan to pay off the delinquent property taxes on her home; and [¶] . . . [t]he grant deed, sales agreement, and release agreement . . . were procured by Defendant's fraud and misrepresentation." The court also (1) imposed another $3,550 in sanctions, (2) ordered defendant to appear for deposition on April 13, 2023, and (3) ordered defendant to comply with the January 3, 2023 discovery order

within 20 days.  The court also warned defendant of "the increased probability that it would grant terminating sanctions if Defendant failed to comply with the March 28, 2023 order."

On June 9, 2023, plaintiff served her ninth and final discovery motion, seeking terminating sanctions on the grounds that defendant still had not complied with written discovery or paid any sanctions, and had appeared for deposition but refused to answer or gave evasive answers to many questions.  Plaintiff attached lengthy excerpts from defendant's deposition in support of her characterization of his answers.  Defendant filed two written oppositions to this motion.

On July 10, 2023, the court held a hearing and granted terminating sanctions in the form of striking defendant's answer and cross-complaint.  The court cited plaintiff's evidence that defendant "asserted various invalid objections and gave evasive responses" to deposition questions; and that he "ha[d] provided factually inconsistent responses throughout the course of this action."  The court stated that although defendant was self-represented, he was not exempt from complying with discovery rules and the court had "presided over multiple hearings where Defendant has demonstrated his ability to make factual and legal arguments."  The court found defendant had willfully failed to comply with its prior orders, imposed additional monetary sanctions of $2,625, vacated the trial date, and set a date for plaintiff to submit a request for entry of default judgment.

Plaintiff's request for entry of default judgment included claims for $750,000 in damages for mental and physical distress, and attorney fees of $316,066.25, supported by detailed declarations from plaintiff and her attorneys.  Plaintiff also requested orders rescinding the purchase and sales agreement as

procured by fraud, voiding the grant deed, and quieting title. The court held a prove-up hearing on October 27, 2023, at which time the court admitted declarations, exhibits and other evidence. The court entered the default judgment on the same date, awarding the amounts of damages and fees plaintiff had requested.

Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant argues that his discovery responses – although late and imperfect – were substantially compliant, his objections to written discovery and deposition questions were made with "substantial justification," and he did not willfully fail to comply with discovery, so the trial court abused its discretion in imposing any sanctions. He claims to have been burdened by a "mountain of discovery" requests, including redundant and irrelevant questions, and to have been improperly questioned about the *Mulligan* case (see fn. 1, *ante*), as to which he signed a confidential settlement agreement.

Defendant also argues that he did not have proper notice of plaintiff's claims regarding damages at the prove-up hearing because plaintiff did not provide a separate statement of damages prior to entry of default, as required by section 425.11 of the Code of Civil Procedure; plaintiff was unjustly enriched by the trial court's failure to take into account in its award of damages his payment of over $10,000 in back taxes and allowing plaintiff to live in the property rent-free for over four years; and the trial court erred in awarding damages for emotional distress because such damages are not available for claims of fraud.

None of these arguments has merit.

### 1. Discovery Sanctions

We review the propriety of a discovery sanctions award for abuse of discretion.  (*Pollock v. Superior Court* (2023) 93 Cal.App.5th 1348, 1358.)  In doing so, we resolve all evidentiary conflicts favorably to the trial court's ruling, and reverse only if the trial court's order was arbitrary or capricious (*Creed-21 v. City of Wildomar* (2017) 18 Cal.App.5th 690, 702 (*Creed-21*)) or was a " 'manifest' " abuse of discretion " ' " 'exceeding the bounds of reason.' " ' "  (*Victor Valley Union High School Dist. v. Superior Court* (2023) 91 Cal.App.5th 1121, 1137 (*Victor Valley*).)  The trial court's findings of fact that underlie a discovery sanction are reviewed for substantial evidence.  (*Ibid.*)

Sanctions for misuse of the discovery process are governed by sections 2023.030 and 2025.450 of the Code of Civil Procedure.  Trial courts have the authority to award monetary sanctions, and to impose evidentiary, issue, and terminating sanctions against any party " ' "engaging in conduct that is a misuse of the discovery process." ' "  (*Creed-21, supra,* 18 Cal.App.5th at p. 701; *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 992 (*Doppes*).)  Misuses of the discovery process include, among other things, "[f]ailing to respond or to submit to an authorized method of discovery," "[m]aking an evasive response to discovery," and "[d]isobeying a court order to provide discovery."  (Code Civ. Proc., § 2023.010, subds. (d), (f), & (g).)

Trial courts are to take an incremental approach to discovery sanctions, starting with monetary sanctions and leading up to the ultimate sanction of termination.  Sanctions must be proportionate to the harm caused by the misconduct and should not provide a " ' "windfall" ' " to the party requesting sanctions.  (*Victor Valley, supra*, 91 Cal.App.5th at p. 1158;

11

*Doppes, supra*, 174 Cal.App.4th at p. 992.) " 'If a lesser sanction fails to curb misuse, a greater sanction is warranted: continuing misuses of the discovery process warrant incrementally harsher sanctions until the sanction is reached that will curb the abuse. . . . "[W]here a violation is willful, preceded by a history of abuse, and . . . less severe sanctions would not produce compliance with the discovery rules, the trial court is justified in imposing the ultimate sanction." ' " (*Creed-21, supra*, 18 Cal.App.5th at pp. 701-702; *id.* at p. 703 [affirming terminating sanction for noncompliance with discovery orders and repeated failure to appear for deposition]; see also *Doppes, supra*, 174 Cal.App.4th at pp. 993-994 [trial court abused its discretion by *not* imposing terminating sanctions, given egregious misuse of discovery process].)

If the trial court finds a misuse of the discovery process, the court may impose sanctions and must impose monetary sanctions where authorized by the discovery statute unless it finds that the noncompliant party acted with "substantial justification or that other circumstances make the imposition of the sanction unjust." (Code Civ. Proc., § 2023.030, subd. (a).) " 'Substantial justification' " means a justification that is clearly reasonable and well-grounded in both law and fact; the party attempting to avoid being sanctioned has the burden to prove that it acted with substantial justification. (*Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1434-1435; see also *Padron v. Watchtower Bible & Tract Society of New York, Inc.* (2017) 16 Cal.App.5th 1246, 1269.)

Again, the standard of review is highly deferential to the trial court. The question before us is not whether the trial court " ' " 'should have imposed a lesser sanction; rather the question is

12

whether the trial court abused its discretion by imposing the sanction it chose.' " ' " (*Creed-21, supra*, 18 Cal.App.5th at p. 702.)  We find no abuse of discretion in this case.

The trial court imposed terminating sanctions only after hearing *eight* previous motions for discovery non-compliance, and only after taking a patient and cautious approach to the discovery dispute.  After plaintiff's first motion to compel, the court gave defendant more time to respond.  When defendant still did not provide complete or adequate written discovery responses, the court imposed moderate monetary sanctions and set new response deadlines in four more discovery hearings between December 2021 and January 2023.  When these orders to compel and monetary sanctions proved insufficient to induce compliance, the court imposed issue sanctions.  When even this severe penalty did not result in discovery compliance, the court imposed terminating sanctions.  The court took exactly the incremental and non-punitive approach contemplated by the discovery statutes.

We have reviewed the excerpts from defendant's written discovery responses and deposition transcripts, and the declarations by plaintiff's counsel, which were provided to the trial court in support of plaintiff's motions to compel.  Substantial evidence supports the trial court's factual findings that defendant engaged in a pattern of delay, submitted late and inadequate responses to written discovery, failed twice to appear for his scheduled deposition, refused to answer discovery and deposition questions without substantial justification; and provided evasive

13

and inconsistent answers,  The trial court did not abuse its discretion in imposing the terminating sanction.[5]

## 2.  Damages and Attorney Fees

Defendant argues that he did not have proper notice of the type and amount of damages plaintiff sought, because plaintiff never filed a statement of damages pursuant to Code of Civil Procedure section 425.11.  Defendant is correct that default judgments – including default judgments resulting from discovery sanctions – are limited to the amount of damages of which the defendant had notice.  (*Schwab v. Rondel Homes, Inc.* (1991) 53 Cal.3d 428, 433 (*Schwab*); *Greenup v. Rodman* (1986) 42 Cal.3d 822, 824-830).)  But his argument fails for the simple reason that plaintiff's complaint states that she is seeking "general damages [for] mental injuries and economic loss"; she sought "general and special damages in an amount to be proven at trial, but no less than $1,000,000," as well as attorney fees pursuant to Welfare and Institutions Code section 15657.5, subdivision (a).  Thus, there was no need for a section 425.11 statement and defendant was properly "apprised of [his] exposure" before the default was taken.  (*Sporn v. Home Depot USA, Inc.* (2005) 126 Cal.App.4th 1294, 1302 (*Sporn*) ["the complaint, which was not limited to personal injuries . . . , expressly apprised defendant of the amount demanded.  A statement of damages would have been superfluous and was not

---

[5]     We reject defendant's contention that the trial court did not use the correct legal standard (substantial justification for failure to comply).  Even if the trial judge did not use those words, the totality of the court's remarks and the facts found by the court convince us the trial court was applying the correct legal standard.

14

required"].)[6] The trial court's award of $750,000 was well within plaintiff's minimum demand and was not an abuse of discretion, even taking into account defendant's payment of the back taxes and plaintiff's continuing to live in the home. Likewise, the attorney fee award was supported by substantial evidence, in the form of detailed declarations by plaintiff's attorneys.[7]

Defendant also argues that the trial court erred in awarding emotional distress damages for fraud, citing *Devin v. United Services Auto. Assn.* (1992) 6 Cal.App.4th 1149. Although

---

[6] Defendant also argues that since plaintiff sought damages for emotional distress, she should not have stated the amount of damages sought in her complaint, but instead provided a separate statement of damages, as required by sections 425.10, subdivision (b) and 425.11 of the Code of Civil Procedure. In *Schwab,* however, the Supreme Court stated it had observed in another context that "where an emotional distress claim is 'incidental' to the cause of action, the cause of action will not be considered an action 'to recover damages for personal injury.' " (*Schwab, supra,* 53 Cal.3d at p. 432.) In any event, this argument is beside the point. The purpose of requiring plaintiffs to state the nature and amount of damages sought, either in the complaint or in a separate statement, is to fulfill the basic due process requirement that a defendant must be apprised of its exposure before a default is taken so that it may reasonably be apprised of the risk of not appearing in the action. (*Sporn, supra,* 126 Cal.App.4th at p. 1302.) That requirement was met in this case.

[7] Defendant argues in his reply brief that the attorney fees awarded were excessive. He does not develop this argument and in any event has forfeited it because he did not raise it in his opening brief.

a plaintiff cannot recover emotional distress damages on a claim of fraud solely affecting property rights, the complaint also includes claims of financial elder abuse, undue influence, and intentional infliction of emotional distress, for which such damages are an appropriate remedy.

## DISPOSITION

The judgment is affirmed.  Plaintiff shall recover costs on appeal.

**CERTIFIED FOR PUBLICATION**


RUBIN, J.*

WE CONCUR:


STRATTON, P. J.


VIRAMONTES, J.

---

\*      Retired Presiding Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.